# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-DP-00410-SCT

**TIMOTHY ROBERT RONK a/k/a TIMOTHY RONK
a/k/a TIMOTHY R. RONK**

**v.**

**STATE OF MISSISSIPPI**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/08/2010 |
| TRIAL JUDGE: | HON. LISA P. DODSON |
| TRIAL COURT ATTORNEYS: | GORDON ERIC GEISS |
| | CHRISTOPHER L. SCHMIDT |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: ALISON R. STEINER |
| | JUSTIN T. COOK |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MELANIE DOTSON THOMAS |
| | JASON L. DAVIS |
| | MARVIN L. WHITE, JR. |
| | CAMERON L. BENTON |
| | BRAD A. SMITH |
| | JOHN R. HENRY, JR. |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - DIRECT APPEAL |
| DISPOSITION: | AFFIRMED - 05/07/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1. A Harrison County jury found Timothy Ronk guilty of capital murder and sentenced him to death. The jury also found Ronk guilty of armed robbery, and the trial court sentenced him to thirty years' imprisonment. Ronk now appeals his convictions and sentences to this Court. Finding no error in the culpability phase or in the sentencing phase, we affirm.

**FACTS**

¶2. On the morning of August 26, 2008, emergency personnel responded to reports of a house fire on Timber Ridge Lane in Biloxi, Mississippi. In their efforts to extinguish the flames, firefighters discovered the remains of a human body in a bedroom of the house. Dental records would later identify the body as thirty-seven-year-old Michelle Lynn Craite. Craite's autopsy revealed multiple stab wounds to her back in addition to severe burns that destroyed her flesh down to the bone. Craite had suffered blistering and burning to the lining of her mouth, tongue, larynx, and windpipe, and a high level of carbon monoxide was found in Craite's blood. This evidence indicated that Craite was still alive and breathing during the fire. Dr. Paul McGarry, a forensic pathologist, opined that the stab wounds likely were the cause of Craite's death, as she would have died from those wounds within "minutes" or "hours" without medical assistance. However, he noted that the stab wounds also incapacitated Craite so that she could not escape from the fire.

¶3. Officer Carl Short and Investigator Mike Shaw with the Biloxi Police Department were called to the scene shortly after the firefighters arrived. While waiting to gain access to the inside of the house, the officers began a perimeter investigation. Officer Short ran the license plate of a red Ford Explorer parked in the house's carport and discovered that the car

2

belonged to Craite. Officer Short also noticed a red plastic gas can sitting in the carport, which appeared to be "out of place." After the fire had been extinguished, Investigator Shaw went to investigate the body, which was laying face down on the floor of the master bedroom. Investigator Michael Manna, who took photographs of the scene, explained that the body had been severely burned, and, "You couldn't even tell it [sic] was a man or a woman until you rolled her over."

¶4.     Special agents from the Bureau of Alcohol, Tobacco and Firearms investigated the cause of the fire. ATF Special Agent Drew Sheldrick and another agent used a fire dog to walk the perimeter and the inside of Craite's house. In total, the dog "alerted" thirteen times to the presence of ignitable liquid in and around Craite's home, including three alerts in the master bedroom, two alerts in the hallway, two alerts in the carport, and one alert on the porch. The ATF investigation resulted in a determination that the fire in Craite's house had been intentionally set, with gasoline vapors being the ignition source. Agent Sheldrick concluded that the gasoline trail traveled "all the way from [the gas can in the carport] through the kitchen and down the hall and into the master bedroom," where Craite had died.

¶5.     Sergeant Christopher DeBack, Supervisor for Violent Crimes Against Persons for the Biloxi Police Department, and lead investigator in this case, interviewed Craite's neighbors and family regarding her death. These individuals stated that Craite had moved to Mississippi from Michigan in 2008 and had been in a relationship with Timothy Ronk. They also confirmed that Ronk had been living with Craite at the time of the fire. During his

investigation, Sergeant DeBack learned that Ronk drove a dark green 1999 Honda Passport, and he instructed local police to be on the lookout for that vehicle.

¶6.     Officer Short and Investigators Shaw and Manna conducted a search of Craite's Ford Explorer. Receipts and items from the glove compartment were strewn about the passenger and driver seats of the vehicle. Investigator Manna retrieved a Mississippi tax receipt and a Mississippi application for certificate of title to a 1999 Honda from inside the vehicle. Both of these documents were in Ronk's name. The investigators also found Ronk's birth certificate inside the vehicle.

¶7.     The police focused on Ronk as their primary suspect and decided to search Craite's bank and phone records for more evidence. After obtaining a subpoena for Craite's bank accounts, the investigators discovered that someone had used Craite's debit card on the morning of her death. The bank records showed a $500 withdrawal from a BancorpSouth ATM located in a Walmart in D'Iberville, Mississippi, a $418.16 purchase at the jewelry department of the same Walmart, and a $116.18 purchase at a Shell gas station in Mobile, Alabama. With a subpoena, police obtained still images from the Walmart ATM's surveillance camera, and Ronk was pictured in the photographs. The police also learned that Ronk had purchased three cartons of cigarettes and an energy drink at the Mobile gas station and had forged Craite's signature on the receipt.

¶8.     Investigator Shaw interviewed Jennifer Mitchell, the manager of the D'Iberville Walmart. Mitchell confirmed that, on August 26, 2008, she had assisted a man with the purchase of a diamond ring. After being shown the picture from the ATM surveillance

4

camera, Mitchell positively identified Ronk as the man who had purchased the ring. According to Mitchell, Ronk initially had expressed interest in a particular ring, but said that "he didn't have time to wait" when he was told the ring would have to be ordered. Ronk then selected a different ring and purchased it using Craite's debit card, receiving one hundred dollars back in cash.

¶9. After obtaining a subpoena for Craite's phone records, Sergeant DeBack learned that Craite kept two cellular phones, and that Ronk had been using one of them. The records revealed that the phone Ronk had been using showed extensive activity to a cell phone number in the (904) area code in northeastern Florida. The phone number belonged to Heather Hindall, a resident of Middlesburg, Florida. Craite's phone records indicated that Ronk and Hindall had communicated regularly, and that their communication had increased in frequency during the two weeks preceding Craite's death. A few days prior to Craite's death, Ronk had sent Hindall a text message asking if she needed a television or an Xbox video game console. Then, on the morning of Craite's death, Ronk had sent Hindall a text message stating that he was loading up and coming to Florida.

¶10. On August 27, 2008, two United States Marshals approached Ronk and Hindall as they were leaving a department store in Jacksonville, Florida, and placed Ronk under arrest for the murder of Michelle Lynn Craite. Law enforcement officials also recovered a knife from Ronk's vehicle. That same day, investigators with the Biloxi Police Department traveled to Jacksonville to question Ronk and Hindall. Hindall told the investigators that she had developed an online relationship with Ronk some time in July of 2008, while he was

5

living with Craite. Hindall was aware that Ronk was living with a "roommate" in Biloxi, but she believed that he planned to move to Florida to marry her. Hindall recalled a phone conversation with Ronk on the night before Craite's death, during which she had heard Craite yelling at Ronk in the background. The next evening, Ronk had arrived in Florida and had proposed to Hindall with the ring he had purchased at the Walmart in D'Iberville.

¶11. Hindall visited Ronk after he was arrested. During their meeting, Ronk told Hindall that he and Craite had gotten into an argument when he attempted to leave for Florida, and Craite had tried to attack him with a knife. He told Hindall that he had disarmed Craite and stabbed her when she threatened to get a shotgun and kill him. Then, Ronk "poured gasoline over everything and lit it on fire and jumped in his truck and took off, and he told me that he had threw [sic] the knife over the bay bridge before he got to me."

¶12. Ronk later confirmed this story in a letter he wrote to Hindall from prison in October 2008. In the letter, Ronk described Craite as a "rich widow" and an "alcoholic millionaire" who fell for him "at first sight." Ronk admitted to Hindall that he had manipulated Craite "to get the car so I could come see you, used her to buy your ring, used her to have money to make the trip." The letter stated that, on the morning of Craite's death, Ronk told Craite that he was leaving for Florida. She began slapping him and then approached him with a knife. Ronk asserted that he never intended to kill Craite, and he had stabbed her only after she threatened to shoot him. Ronk concluded, "When I realized what I had done, I cleaned the knife off, changed my clothes, doused the house with gasoline, set it on fire and drove off . . . ."

6

¶13. No weapons were found inside Craite's house. However, the police did find two unloaded shotguns stored in their cases in a studio apartment behind Craite's house.

## PROCEDURAL HISTORY

¶14. On June 1, 2009, a grand jury indicted Ronk for armed robbery and capital murder with the underlying felony of arson. Ronk's trial commenced on October 4, 2010. Ronk presented no witnesses in his defense. On October 7, 2010, a jury convicted Ronk of capital murder and armed robbery. Ronk's sentencing hearing commenced the following day. To prove additional aggravating circumstances supporting the death penalty, the State relied primarily on the reintroduction of evidence from the culpability phase of trial. Ronk presented Dr. Beverly Smallwood, a psychologist, as a mitigation witness. Dr. Smallwood testified that Ronk had been diagnosed with bipolar disorder and ADHD early in life. As a result, Dr. Smallwood opined that Ronk was susceptible to impulsive behavior, but clarified that Ronk's disorders did not significantly interfere with his ability to separate right from wrong.

¶15. At the conclusion of the sentencing phase of Ronk's trial, the jury unanimously sentenced Ronk to the death penalty for his capital-murder conviction. The jury provided the following findings supporting its decision:

> We the jury unanimously find from the evidence beyond a reasonable doubt that the following facts existed at the time of the commission of the capital murder.
>
> • The Defendant actually killed Michelle Lynn Craite.
>
> Next, we, the Jury, unanimously find that the aggravating circumstances of:

• The capital offense was committed while the Defendant was engaged in the commission of Arson.

• The capital offense was committed by a person under sentence of imprisonment.

• The capital offense was especially heinous, atrocious, or cruel.

Exists beyond a reasonable doubt and is/are sufficient to impose the death penalty and that there are insufficient mitigating circumstance(s) to outweigh the aggravating circumstance(s), and we further find unanimously that the Defendant should suffer death.

The trial court sentenced Ronk to thirty years' imprisonment for the armed-robbery charge.

¶16. After his post-trial motions were denied by the trial court, Ronk timely appealed his conviction and sentence, raising the following issues:

I. **Whether the trial court erred in giving or failing to give certain jury instructions during the culpability phase of trial.**

II. **Whether the verdict was supported by sufficient evidence.**

III. **Whether Ronk received ineffective assistance of counsel during the sentencing phase of trial.**

IV. **Whether the trial court failed to sequester the jury properly.**

V. **Whether inadmissible evidence was allowed into trial.**

VI. **Whether the State overcompensated Heather Hindall for her trial testimony.**

VII. **Whether the trial court properly instructed the jury during the sentencing phase of trial.**

VIII. **Whether Ronk's death sentence is unconstitutional.**

IX. **Whether the death sentence is disproportionate to the crime.**

X. **Whether any error can be considered harmless.**

**XI.** **Whether the cumulative effect of all errors mandates reversal or a new trial.**

¶17. Additional facts will be discussed below as they relate to each issue.

## DISCUSSION

¶18. This Court reviews an appeal from a capital-murder conviction and death sentence under heightened scrutiny. *Walker v. State*, 913 So. 2d 198, 216 (Miss. 2005) (citations omitted). We must resolve all genuine doubts in favor of the accused. *Id.* "[W]hat becomes harmless error in a case with less at stake may become reversible error when the penalty is death[.]" *Hansen v. State*, 592 So. 2d 114, 142 (Miss. 1991) (citing *Irving v. State*, 361 So. 2d 1360, 1363 (Miss. 1978)).

**I.** **Whether the trial court erred in giving or failing to give certain jury instructions during the culpability phase of trial.**

¶19. At trial, Ronk requested jury instructions supporting three theories of defense: self-defense, imperfect-self-defense manslaughter, and deliberate-design murder. Ronk also submitted a jury instruction on heat-of-passion manslaughter, but he later withdrew that instruction. The trial court granted Ronk's self-defense and murder instructions but denied his imperfect-self-defense manslaughter instruction. At the State's request, and over Ronk's objection, the trial court also instructed the jury on arson as a separate lesser offense. In addition, the trial court instructed the jury on the one-continuous-transaction doctrine applicable to felony-murder cases. On appeal, Ronk argues that the trial court erred in denying his imperfect-self-defense instruction, in giving the State's arson instruction, and in giving a one-continuous-transaction instruction.

9

¶20.    "It is well settled that jury instructions generally are within the discretion of the trial court, so the standard of review for the denial of jury instructions is abuse of discretion." *Newell v. State*, 49 So. 3d 66, 73 (Miss. 2010) (citing ***Davis v. State***, 18 So. 3d 842, 847 (Miss. 2009) (internal citations omitted)). When considering whether error lies in granting or refusing a jury instruction, the instructions actually given must be read as a whole and in context. ***Ruffin v. State***, 992 So. 2d 1165, 1176 (Miss. 2008) (citations omitted). No reversible error exists if the instructions fairly, though not perfectly, announce the law of the case and create no injustice. ***Rubenstein v. State***, 941 So. 2d 735, 784-785 (Miss. 2006) (citations omitted). "A defendant is entitled to have jury instructions given which present his theory of the case[;] however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." ***Agnew v. State***, 783 So. 2d 699, 702 (Miss. 2001) (citations omitted). "In homicide cases, the trial court should instruct the jury about a defendant's theories of defense, justification, or excuse that are supported by the evidence, no matter how meager or unlikely[.]" ***Manuel v. State***, 667 So. 2d 590, 593 (Miss. 1995). We address each of Ronk's arguments regarding jury instructions separately.

### A.    Whether the trial court erred in failing to grant an instruction on imperfect-self-defense manslaughter.

¶21.    Instruction D-17 embodied Ronk's theory of imperfect self-defense. This instruction asked the jury to find Ronk guilty of manslaughter if it found that Ronk "did willfully kill Michelle Lynn Craite, without malice, under the bona fide belief, but without reasonable cause therefore, that it was necessary for him so to do in order to prevent Michelle Lynn

10

Craite from inflicting death or great bodily harm upon him[.]" The trial court denied this instruction, finding that a reasonable jury could not acquit Ronk of capital murder and convict him of manslaughter based on the evidence presented at trial. Ronk now argues that this instruction was supported by his statements to Hindall concerning his altercation with Craite on the day of her death. Because no weapons were found inside Craite's house, but two shotguns were found in the studio apartment behind the house, Ronk argues that a reasonable jury could find him guilty of imperfect-self-defense manslaughter, rather than capital murder.

¶22. Unlike true self-defense, imperfect self-defense is not a defense to a criminal act. Rather, under the theory of imperfect self-defense, "an intentional killing may be considered manslaughter if done without malice but under a bona fide (but unfounded) belief that it was necessary to prevent death or great bodily harm." *Wade v. State*, 748 So. 2d 771, 775 (Miss. 1999) (citing *Lanier v. State*, 684 So. 2d 93, 97 (Miss. 1996)). The Legislature has determined that manslaughter is a lesser-included offense to both capital murder and simple murder, "and the jury may be properly instructed thereon . . . in any case in which the giving of such instruction would be *justified by the proof*, consistent with the wording of the applicable manslaughter statute." Miss. Code Ann. § 99-19-5(2) (Rev. 2007) (emphasis added). This Court has held that a jury instruction on a lesser-included offense should be granted where a rational jury could find the defendant "not guilty of the principal charge made in the indictment but guilty of a lesser included offense[.]" *Fairchild v. State*, 459 So. 2d 793, 800 (Miss. 1984) (citing *Knowles v. State*, 410 So. 2d 380, 382 (Miss. 1982)). In making this determination, this Court must "tak[e] the evidence in the light most favorable

11

to the accused, and conside[r] all reasonable inferences which may be drawn in favor of the accused from the evidence[.]" ***Harper v. State***, 478 So. 2d 1017, 1021 (Miss. 1985). Keeping this standard in mind, we find that Ronk was not entitled to an instruction on imperfect-self-defense manslaughter.

¶23.    Ronk was charged with capital murder under Section 97-3-19(2)(e) of the Mississippi Code, which provides, in relevant part, "The killing of a human being without the authority of law by any means or in any manner shall be capital murder . . . [w]hen done with or without any design to effect death, by any person engaged in the commission of the crime of . . . arson[.]" Miss. Code Ann. § 97-3-19(2)(e) (Rev. 2014). "Unlike other sections of the capital murder statute, Subsection 2(e) does not require the prosecution to prove the elements of murder, only that a killing took place while the accused was 'engaged in the commission' of the enumerated felonies." ***Layne v. State***, 542 So. 2d 237, 243 (Miss. 1989). *See also **Gray v. State***, 351 So. 1342, 1348 (Miss. 1977) (holding that malice, premeditation, or deliberation are not elements of felony murder). Thus, Ronk's case is distinguishable from those in which the defendant was charged either with simple murder or a different category of capital murder, which require the State to prove malice. *See, e.g.*, ***Maye v. State***, 49 So. 3d 1124, 1129-33 (Miss. 2010) (holding that the trial court erred in denying defendant's defense-of-others instruction, where defendant was charged with capital murder of a police officer under Section 97-3-19(2)(a)); ***Williams v. State***, 53 So. 3d 734 (Miss. 2010) (holding that the trial court erred in denying defendant's assisted-suicide instruction, where defendant was charged with simple murder); ***Cole v. State***, 118 So. 3d 663 (Miss. Ct. App. 2012) (holding that trial court erred in denying defendant's heat-of-passion manslaughter instruction, where defendant

12

was charged with simple murder). If the jury found that Craite's death occurred while Ronk was engaged in the commission of an arson, the fact that the killing was a manslaughter rather than a murder would have no effect on his guilt under Section 97-3-19(2)(e).

¶24.    Likewise, Ronk's case is distinguishable from other felony-murder cases in which the defendant offered a true defense to the underlying felony. For example, in ***Banyard v. State***, 47 So. 3d 676, 682 (Miss. 2010), the defendant was charged with capital murder while engaged in a robbery. The defendant argued at trial that he had participated in the robbery under duress, but his proffered jury instruction on duress was denied. ***Id.*** On appeal, this Court found that the evidence supported both a duress instruction for the underlying robbery and a manslaughter instruction, reasoning, "[I]f the jury found that Banyard was indeed acting under duress, he could not be found guilty of the robbery of Ballard, one of the essential elements of the capital-murder charge." ***Id.*** at 683.

¶25.    Unlike the defendant in ***Banyard***, Ronk did not offer a defense to the underlying felony of arson. If the jury accepted Ronk's theory that he stabbed Craite while acting in imperfect self-defense, he would still be guilty of manslaughter, a "killing of a human being without the authority of law." *See* Miss. Code Ann. § 97-3-19(2) (Rev. 2014). Contrary to ***Banyard***, Ronk's proffered theory of imperfect self-defense does not eliminate an essential element of his capital-murder charge. *See, e.g.,* ***Jacobs v. State***, 870 So. 2d 1202, 1209 (Miss. 2004) ("Therefore, because Jacobs was found guilty of robbery, and the death resulted in the commission of the robbery, Jacobs is guilty of capital murder regardless of whether a lesser-included offense instruction [on manslaughter] is given.").

¶26. Finally, Ronk relies on a single statement of dicta in *Gause v. State*, 65 So. 3d 295, 299 (Miss. 2011), *rejected on other grounds*, *Hall v. State*, 127 So. 3d 202, 207 (Miss. 2013). In *Gause*, the defendant was charged with capital felony murder but was convicted of heat-of-passion manslaughter and burglary. *Id.* On appeal, the defendant argued that the trial court had erred in instructing the jury on burglary as a lesser-included offense to capital murder. *Id.* at 300. Though the propriety of the manslaughter instruction was not an issue on appeal, the *Gause* Court began its discussion of the case by noting that "it is undisputed that Gause was entitled to a heat-of-passion manslaughter instruction, based on the evidence." *Id.*

¶27. Ronk argues that, under *Gause*, a manslaughter instruction is warranted in a felony-murder case even when the evidence of the underlying felony is largely undisputed. But the above-quoted dicta in *Gause* does not stand for such a proposition. The *Gause* Court provided no authority, other than the statute generally defining lesser-included offenses, to support its statement regarding the propriety of a manslaughter instruction in that case. Moreover, the statement in question is mere dicta, as the propriety of a manslaughter instruction was not an issue on appeal in *Gause*. Finally, and most importantly, the statement was incorrect. As the defendant in *Gause* conceded, manslaughter, if committed during the course of a burglary, would constitute capital murder, because "capital murder does not require intent to kill, but only that a killing have occurred during the commission of an enumerated felony." *Id.* As explained above, the same reasoning applies in this case. Even if the jury accepted Ronk's theory of imperfect self-defense, such a finding would lower his culpability for Craite's death to manslaughter, which is a "killing of a human being without the authority of law." *See* Miss. Code Ann. § 97-3-19(2) (Rev. 2014). No evidence was

14

presented which would have allowed the jury to separate the killing from the arson and convict Ronk only of manslaughter. Accordingly, we hold that the trial court did not err in denying Ronk's imperfect-self-defense manslaughter instruction.

### B. Whether the trial court erred in allowing the jury to consider a verdict of arson as a lesser-included offense of capital murder.

¶28.    At the conclusion of trial, Ronk sought a jury instruction on deliberate-design murder under the theory that the arson and the killing were distinct and unrelated crimes. Although the trial court clearly harbored doubts about the evidentiary basis for such an instruction, it granted the instruction "out of an abundance of caution." Concerned that Ronk would escape punishment for the admitted arson if the jury returned a verdict finding him guilty of only simple murder, the State asked the court to include a lesser-offense instruction on arson. The court asked Ronk if he agreed with giving an arson instruction. Ronk initially disagreed, simply stating, "There's no basis for doing so." The court ordered the State to draft an arson instruction and submit it to the defense for review. Then, after further deliberation on other instructions, the following exchange occurred:

> THE COURT: Then as I understand from the off-the-record discussions we have D-11, which the Court granted, which was the lesser included concerning murder. We have S-103, which is the one that the state has now submitted concerning the arson elements, and then we've tried to combine those into what is now known as D-11A. If I'm understanding correctly, defense, you would withdraw D-11. State, you would withdraw, S-103, and both parties would agree, based on the court's other rulings concern [sic] the lesser included and the arson, that D-11A would be the proper instruction. State?
>
> STATE: We would.
>
> THE COURT: Defense?

15

DEFENSE: That's correct, Your Honor.

D-11A combined Ronk's murder instruction and the State's arson instruction.

¶29.   On appeal, Ronk argues that the trial court erred in granting instruction D-11A, because arson is not a lesser-included offense of capital murder. Thus, he argues that instruction D-11A effectively constituted a substantive amendment to his indictment. We find this issue to be procedurally barred. "It is incumbent on the party asserting error to make a contemporaneous objection and obtain a ruling in order to preserve the objection." ***Brown v. State***, 965 So. 2d 1023, 1029 (Miss. 2007). Ronk agreed to the submission of D-11A. Thus, he has waived any argument concerning this instruction.

¶30.   Procedural bar notwithstanding, this argument is without merit, as the trial court's decision to give an arson instruction could not have contributed to the jury's verdict in this case. In ***Conley v. State***, 790 So. 2d 773, 792-93 (Miss. 2001), a capital-murder defendant argued on appeal that the trial court had erred in giving the State's manslaughter instruction, which failed to fully define culpable negligence. The Court agreed with the defendant but found that the trial court's error did not contribute to the verdict, "as the jury unanimously agreed that Conley murdered Whitney Berry while engaged in the crime of kidnapping." ***Id.*** at 793. Here, because the jury convicted Ronk of capital murder, any alleged error in instructing the jury separately on arson would be harmless beyond a reasonable doubt. "This Court will deem harmless an error where 'the same result would have been reached had [it] not existed.'" ***Pitchford v. State***, 45 So. 3d 216, 235 (Miss. 2010) (quoting ***Tate v. State***, 912 So. 2d 919, 926 (Miss. 2005)). Accordingly, this argument is without merit.

**C.** **Whether the trial court erred in instructing the jury on the "one continuous transaction" theory of capital felony murder.**

¶31.    Ronk argued at trial that he could not be convicted of capital murder because Craite's death did not occur while Ronk was "engaged in the commission" of an arson. At the conclusion of the trial, over Ronk's objection, the trial court accepted the State's instruction S-101, which defined the one-continuous-transaction doctrine applicable to felony-murder cases. The instruction provided, in relevant part: "[A] killing occurring while engaged in the commission of an arson includes the actions of the defendant leading up to the arson, the arson and the flight from the scene of the arson." On appeal, Ronk argues that the trial court erred in giving instruction S-101 because the evidence does not support a finding that Craite died "as a result of the arson."

¶32.    We find that the trial court did not err in instructing the jury on the one-continuous-transaction doctrine, which was adopted by this Court to define the requisite causal nexus between a killing and the underlying felony in a capital felony-murder case. *Fisher v. State*, 481 So. 2d 203, 212 (Miss. 1985). This Court repeatedly has approved of instructions in felony-murder cases with language identical to instruction S-101. *See* *Batiste v. State*, 121 So. 3d 808, 832-33 (Miss. 2013); *Fulgham v. State*, 46 So. 3d 315, 328-29 (Miss. 2010). Thus, instruction S-101 was a correct statement of the law governing capital felony-murder cases. Ronk's arguments here relate more to the sufficiency of the evidence, rather than the legality of S-101 as a general matter. We address those arguments below.

**II.**    **Whether the verdict was supported by sufficient evidence.**

¶33. Ronk challenges the sufficiency of the State's evidence to prove that he killed Craite while engaged in the commission of an arson. He argues that, because he did not intend to commit an arson at the time he stabbed Craite, the evidence presented to the jury does not support a capital-murder conviction. When reviewing the sufficiency of the evidence, we must determine whether the evidence shows "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]" *Bush v. State*, 895 So. 2d 836, 833 (Miss. 2005). This Court must view all credible evidence consistent with the defendant's guilt and all inferences drawn from the evidence in the light most favorable to the State. *Hughes v. State*, 90 So. 3d 613, 629 (Miss. 2012). The evidence will be found to be sufficient if "it is of such weight and quality that, 'having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense." *Bush*, 895 So. 2d at 843 (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss.1995)). If any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt, this Court will not disturb the jury's verdict. *Id*.

¶34. To sustain a conviction for capital murder, the State was required to prove beyond a reasonable doubt that Ronk killed Craite, without the authority of law, and with or without any design to effect her death, while he was engaged in the commission of the crime of arson. Miss. Code Ann. § 97-3-19(2)(e) (Rev. 2014). For the underlying felony of arson, the State was required to prove beyond a reasonable doubt that Ronk willfully and maliciously set fire to or burned Craite's house, regardless of whether it was occupied. Miss. Code Ann. § 97-17-

18

1(1) (Rev. 2014). Ronk challenges only the sufficiency of the evidence supporting the causal nexus between the killing and the arson.

¶35.    Viewing the evidence and the reasonable inferences drawn therefrom in the light most favorable to the State, we find no merit in Ronk's assertion that the arson was only incidental to the killing. Ronk admitted to pouring gasoline throughout Craite's house and setting it on fire after stabbing her multiple times, leaving her incapacitated. Dr. McGarry offered substantial evidence indicating Craite was still alive at the time of the fire, but was unable to escape due to her stab wounds. Faced with this evidence, a reasonable jury could find that Ronk killed Craite "without the authority of law" while he was "engaged in the commission of" an arson, as required by our capital-murder statute. *See* Miss. Code Ann. § 97-3-19(2)(e) (Rev. 2014). Accordingly, we hold that the evidence presented was sufficient to sustain a conviction of capital murder with the underlying felony of arson.

**III.    Whether Ronk received ineffective assistance of counsel during the sentencing phase of trial.**

¶36.    A claim of ineffective assistance of counsel requires proof of two elements. First, the defendant must prove that his counsel's performance was deficient. ***Irby v. State***, 893 So. 2d 1042, 1049 (Miss. 2004) (citing ***Strickland v. Washington***, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). To establish deficient performance, the defendant must show that his counsel's representation fell below "an objective standard of reasonableness." ***Davis v. State***, 897 So. 2d 960, 967 (Miss. 2004) (citing ***Williams v. Taylor***, 529 U.S. 362, 390-91, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). Second, the defendant must prove that such deficient performance prejudiced the defense of the case. ***Ross v. State***, 954 So. 2d 968, 1003

(Miss. 2007) (citing *Irby*, 893 So. 2d at 1049). "To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different." *Id.* at 1003-04 (citing *Davis*, 897 So. 2d at 967). Where ineffectiveness is established in the sentencing phase of a capital proceeding, the resulting death penalty must be vacated and a new sentencing proceeding held. *Doss v. State*, 19 So. 3d 690, 709 (Miss. 2009).

¶37. Generally, ineffective-assistance claims are more appropriately brought during post-conviction proceedings. *Archer v. State*, 986 So. 2d 951, 955 (Miss. 2008). However, a claim of ineffectiveness may be raised on direct appeal "if such issues are based on facts *fully apparent from the record*." Miss. R. App. P. 22(b) (emphasis added). Where, as here, the defendant's appellate counsel did not represent the defendant at trial, failure to raise such issues on direct appeal will bar consideration of the issue in post-conviction proceedings. *Id.*

¶38. Ronk asserts that his trial attorney's performance during the sentencing phase of trial was deficient for four reasons. First, Ronk claims that his attorney suffered from significant medical problems throughout the course of his representation of Ronk, impeding his performance and perhaps his judgment. Second, Ronk claims that his attorney enlisted the assistance of an expert witness who was not equipped to perform a mitigation study in a capital case and who presented inadmissible prejudicial evidence to the jury. Next, Ronk argues that his counsel impermissibly failed to request jury instructions on statutory mitigating factors supporting the defense's mitigation theory. Finally, Ronk contends that his attorney made a prejudicially inadequate closing argument at the completion of the

sentencing phase of trial. He also points to various other alleged errors under other issues in his brief and asks this Court to view those errors alternatively as claims of ineffective assistance. We find that these claims are not based on facts fully apparent from the record, and it would be inappropriate for this Court to attempt to dispose of them on direct appeal. Accordingly, we dismiss this claim of error without prejudice to Ronk's ability to raise it properly in a post-conviction relief proceeding.

### IV. Whether the trial court failed to sequester the jury properly.

¶39. On October 4, 2010, the parties selected the final panel of twelve jurors and two alternates from a pool of thirty-six venire members. Without revealing the final makeup of the jury, the trial court gave the following instruction to all thirty-six members of the venire:

> Jurors one through 36, some amongst you will be serving on this case and will be staying with us so I need you to listen very carefully to my instructions . . . . I'm going to let you go home for the evening . . . . What I'm going to have to ask each of you to do is to pack a bag as if you are staying with us. You need to pack and plan for tomorrow through Friday . . . . If you have something that you want to read in the evening you may bring that. However, it may not have anything to do with the legal system, with law enforcement, anything of that type . . . . You have the same instructions that you had at lunchtime. That you may not make up your mind about the case. You may not discuss the case with anyone. You cannot tell anyone, you can simply tell them I'm still pending being selected for jury duty. I can't discuss it with you right now . . . . Again reminding you, do not do any research of any kind. Do not receive any messages of any kind from anyone giving you any sort of information [about the case]. Do not become exposed to any media coverage. That includes don't read the paper . . . . Do not watch the news tonight. If it appears there's going to be any sort of blurb at all about it you don't want to watch that part. Everyone understand? Did I leave out anything, Mr. Schmidt, Mr. Geiss?

21

The attorneys did not add anything to this instruction. The next morning, the trial court announced the twelve jurors and two alternates, and they were sworn in for jury duty. At this point, the jurors were sequestered for the entire trial.

¶40. For the first time on appeal, Ronk challenges the trial court's sequestration procedure. Again, because Ronk did not submit a contemporaneous objection to this procedure, his claim is procedurally barred on appeal. *Cole*, 525 So. 2d at 369. Notwithstanding the procedural bar, Ronk's argument is without merit.

¶41. Uniform Circuit and County Court Rule 10.2 requires the jury to be sequestered "during the entire trial" in any case in which the State seeks the death penalty. URCCC 10.2. In capital cases, Rule 10.2 is enforced "to insure a fair and impartial jury that will return a verdict beyond reproach." *Simmons v. State*, 805 So. 2d 452, 506 (Miss. 2001). Ronk argues that the trial court violated Rule 10.2 by letting the venire panel go home after the final jury panel had been selected. But this Court has approved of this exact procedure. *Watts v. State*, 733 So. 2d 214, 242 (Miss. 1999). In *Watts*, the jury was empaneled, sworn in for duty, and then allowed to return home briefly to pack. *Id.* Because the trial had not actually commenced, and because the jury had not admonished, this Court determined there was no reversible error. *Id.* at 242-244. However, this Court cautioned that "[t]he better practice would have been for the circuit court to advise venire members the night before final jury selection and swearing in to come to court with packed suitcases." *Id.* at 244. In the instant case, the trial court followed this Court's instruction in *Watts*. The trial court allowed the venire panel to go home and pack on the night before the final jury selection was

22

announced. The trial court gave the venire members an appropriate admonition regarding discussing the case. The next day, the final jury panel was announced, and the jurors were sequestered "during the entire trial." URCCC 10.2. Accordingly, the trial court did not fail to sequester the jury properly.

### V. Whether inadmissible evidence was presented to the jury at trial.

¶42. Ronk challenges several of the trial court's evidentiary rulings during the culpability phase of his trial. First, Ronk claims that the trial court erred in limiting Heather Hindall's testimony regarding Ronk's statements to her about Craite. Next, Ronk argues that the trial court erred in admitting a knife found in Ronk's car when he was arrested in Florida. Third, Ronk argues that the admission of Craite's bank records violated his right to confront the witnesses against him. Further, Ronk argues that the trial court erred in allowing Jennifer Mitchell, the Walmart employee who sold Ronk a diamond ring, to testify regarding her out-of-court identification of Ronk. And finally, Ronk argues that the State presented impermissibly inflammatory evidence at various stages of the trial. Because the admission and exclusion of evidence rests in the trial court's discretion, we will not reverse a trial court's evidentiary ruling absent a finding of abuse of discretion "so as to be prejudicial to the accused." *Burrows v. State*, 961 So. 2d 701, 706 (Miss. 2007) (quoting *Fisher v. State*, 690 So. 2d 268, 274 (Miss. 1996)).

### A. Whether the trial court erred in limiting Hindall's testimony regarding statements made by Ronk describing a "violent confrontation" with Craite.

¶43.    On direct examination of Heather Hindall, the State introduced a letter from Ronk to Hindall describing the course of events leading up to Craite's death.  On cross-examination, Ronk's counsel asked Hindall if Ronk had ever described Craite's personality to her.  Hindall responded that Ronk had told her that Craite was an alcoholic.  The State objected to this statement as inadmissible hearsay and character evidence of the victim.  The trial court asked Ronk whether this information was contained in the letter already introduced into evidence, or if it was contained in some other communication not yet in evidence.  Ronk stated that this line of questioning related to a phone conversation between Ronk and Hindall the night before Craite's death, during which Hindall had overheard Craite yelling at Ronk.  The trial court allowed Ronk to make a proffer of Hindall's testimony regarding that phone conversation.   The trial court then allowed Hindall to testify regarding the phone conversation but prohibited Ronk from introducing any other conversations for the purpose of attacking Craite's character.  After asking Hindall about her phone conversation with Ronk on the night before Craite's death, Ronk tendered the witness for redirect examination. On appeal, Ronk argues that the trial court erred in limiting Hindall's testimony concerning her conversations with Ronk.

¶44.    We find that Ronk's assertions are without merit.   In his brief, Ronk refers to "additional statements" that he sought to admit into evidence, but no "additional statements" were ever offered by Ronk during Hindall's cross-examination.  It is clear from the record that his attorney intended to question Hindall only about the phone conversation in question,

24

and the trial court allowed Hindall to give that testimony. Thus, we find no error in the trial court's evidentiary ruling here.

### B. Whether the trial court erred in admitting a knife into evidence that allegedly was inconsistent with the characteristics of the knife used to stab Craite.

¶45. At trial, Hindall testified that Ronk told her that he had thrown the knife he had used to stab Craite "over the bay bridge" on his way to Florida. Later in her testimony, Hindall stated that she had observed a knife in Ronk's vehicle when he arrived in Florida. The State then moved to introduce Exhibit 50, the knife found in Ronk's vehicle on the day of his arrest, into evidence for identification purposes only. Ronk did not object. Hindall testified that she recognized the knife as the one she saw in Ronk's vehicle when he arrived in Florida.

¶46. Exhibit 50 also was introduced during Dr. McGarry's direct examination. Dr. McGarry testified that Craite had suffered multiple stab wounds along her lower back prior to her death. Dr. McGarry opined that the instrument used to inflict these wounds was likely a knife "with a sharp edge and a blunt edge and a point, and it would have a blade of somewhere in the range of at least four inches." The State presented Exhibit 50 to Dr. McGarry, and he opined that Exhibit 50 was consistent with the type of knife that inflicted the wounds in question. Ronk did not object. On cross-examination, Ronk pointed out the fact that Exhibit 50 featured a serrated back, which did not match Dr. McGarry's description of the knife that inflicted Craite's wounds. When confronted with this distinction, Dr.

25

McGarry maintained his opinion that Exhibit 50 was consistent with the type of knife used to stab Craite.

¶47. The State finally offered Exhibit 50 to be admitted into evidence during Investigator DeBack's testimony. Investigator DeBack had recovered the knife from Ronk's vehicle upon his arrest. He testified that the knife was tested for DNA or other genetic material, but the results had come back negative. When the State offered the knife into evidence, Ronk objected, arguing that it was irrelevant to the crime because it did not match Dr. McGarry's description of the murder weapon. The trial court denied Ronk's objection, and the knife was admitted into evidence. On appeal, Ronk again argues that the trial court erred in admitting the knife into evidence because it lacked relevance and prejudiced his defense.

¶48. "All relevant evidence is admissible, except as provided by the Constitution of the United States, the Constitution of the State of Mississippi, or by [the Mississippi Rules of Evidence]." Miss. R. Evid. 402. Evidence is considered relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Miss. R. Evid. 401. Of course, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Miss. R. Evid. 403. "Where a trial court determines that potentially prejudicial evidence possesses sufficient probative value, it is within that court's sound discretion whether or not to admit same, since M.R.E. 403 does not mandate exclusion but rather provides that the evidence *may* be excluded." *Jones v. State*, 904 So. 2d 149, 152 (Miss. 2005) (citing *Baldwin v. State*, 484 So. 2d 148, 156 (Miss. 2001)).

¶49. This Court has held that "[w]hen there is evidence that a weapon could have caused an injury and some connection between the defendant and the weapon exists, the weapon will be deemed relevant and admissible." *Ross v. State*, 954 So. 2d 968, 993 (Miss. 2007). In *Ross*, this Court held that the trial court did not err in admitting into evidence a gun of the same caliber as the murder weapon, even though no forensic evidence tied the gun to the defendant, where a witness testified that the defendant had disposed of the gun the day after admitting to the victim's murder. *Id.* Similarly, in *Stokes v. State*, 518 So. 2d 1224, 1227 (Miss. 1988), this Court held that it was not error for the trial court to admit into evidence a pair of pliers as the possible murder weapon. Even though there was no proof that the pliers actually were used to kill the victim, other evidence showed that a blow by the pliers could have caused the type of injury sustained by the victim. *Id.* In the instant case, just as in *Ross* and *Stokes*, although no forensic evidence linked the knife to Craite's murder, Dr. McGarry specifically opined that the knife was consistent with the type of knife that caused Craite's stab wounds, even after considering the fact that Exhibit 50 had a serrated back. Thus, Dr. McGarry's testimony supported the knife's admissibility. And because Ronk admitted to stabbing Craite with a knife, we find that the knife's probative value is not outweighed by any arguable prejudicial effect. Accordingly, the trial court did not abuse its discretion in admitting Exhibit 50.

### C. Whether the trial court erred in admitting Craite's bank records.

¶50. Craite's bank statements were offered into evidence by the State during the testimony of Detective Schlicht, who had obtained the records under subpoena from the bank's security

director. Ronk did not object, and the trial court admitted the records into evidence. The records showed that someone had used Craite's debit card after she had died. Ronk now argues that the trial court's admission of the bank records violated his Sixth Amendment right to confront the witnesses against him. He claims that this evidence was testimonial in nature, and that Detective Schlicht had no personal knowledge of how they were prepared.

¶51. Because Ronk did not raise a contemporaneous objection to the admission of the bank records, his argument on this issue is procedurally barred. "Counsel must object contemporaneously to inadmissible evidence in order to preserve the error for appeal." *Boyd v. State*, 977 So. 2d 329, 337 (Miss. 2008) (citations omitted). "If no contemporaneous objection is made, the error, if any, is waived. This rule is not diminished in a capital case." *Cole v. State*, 525 So. 2d 365, 369 (Miss. 1987). We have consistently applied the procedural bar to Confrontation Clause claims when the issue was not raised at trial. *See*, *e.g.*, *Galloway v. State*, 122 So. 3d 614, 661 (Miss. 2013); *Rogers v. State*, 928 So. 2d 831, 838 (Miss. 2006).

¶52. Procedural bar notwithstanding, Ronk's claim is without merit, as any conceivable error in the admission of these records is harmless beyond a reasonable doubt. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986) (recognizing that a violation of the Confrontation Clause is subject to harmless-error analysis). In *Van Arsdall*, the United States Supreme Court held that the prejudicial effect of a violation of the Confrontation Clause is subject to a number of factors, including "the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence of evidence corroborating or contradicting the testimony of the witness on material

28

points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." ***Id.*** In this case, Craite's bank statements did not directly implicate Ronk in Craite's murder, but they helped explain the investigation of Craite's death. Ronk was given ample opportunity to cross-examine Dectective Schlicht concerning the acquisition of the records and did not challenge the accuracy of the records. In addition, the bank statements corroborated Ronk's own admissions that he used Craite's money to buy Hindall's ring and to escape to Florida. *See **Smith v. State***, 986 So. 2d 290, 301-302 (Miss. 2008) (finding harmless error in the trial court's admission of co-defendant's out-of-court statement against the defendant, where defendant's own admissions were "the most probative and damaging evidence admitted against him, and constituted direct evidence of the facts related to [the victim's] murder.") Thus, we find that the admission of Craite's bank statements was "unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." ***Yates v. Evatt***, 500 U.S. 391, 392, 111 S. Ct. 1884, 1886, 114 L. Ed. 2d 432, 448 (1991)).

### D. Whether the trial court erred in failing to exclude evidence of Jennifer Mitchell's identification of Ronk.

¶53. Investigator Shaw interviewed Jennifer Mitchell, the jewelry sales manager of the D'Iberville Walmart, on the day after Craite's death. Ronk had purchased a diamond ring from Mitchell using Craite's debit card the day before. Investigator Shaw showed Mitchell a photograph of Ronk retrieved from the ATM surveillance camera, and Mitchell identified Ronk as the man who had purchased the ring. During Investigator Shaw's testimony, the

29

State admitted the surveillance photograph of Ronk into evidence, with no objection from Ronk.

¶54. Mitchell also testified in great detail regarding her interactions with Ronk on the day of Craite's death. Mitchell testified that her shift began at 7:00 a.m., and she assisted a man with the purchase of an engagement ring at approximately 9:00 a.m. She recalled showing the man a yellow-gold, half-carat, solitaire diamond ring that cost $798, but he wanted to purchase a white-gold ring. Mitchell then showed him a white-gold solitaire ring that cost $288. The man purchased the white-gold ring with a debit card and requested $100 cash back. A receipt for the ring confirming these details was admitted into evidence. During Mitchell's testimony, the State showed her the surveillance photograph of Ronk that previously had been admitted into evidence, and Mitchell again identified Ronk as the man who had purchased the ring from her. Mitchell also made an in-court identification of Ronk. Ronk did not object to this procedure.

¶55. On appeal, Ronk argues that Mitchell's out-of-court identification of him was unduly suggestive and should have been excluded. He also argues that Mitchell's in-court identification was tainted by the previous suggestive out-of-court identification. However, Ronk did not object to the admission of any of this evidence. Thus, his claim is procedurally barred. *See Cole*, 525 So. 2d at 369. Notwithstanding the procedural bar, Ronk's argument is without merit.

¶56. "The showing of a single photograph is an inherently suggestive method of identification." *Herrerra v. Collins*, 904 F.2d 944, 947 n.1 (5th Cir. 1990). Accordingly, this Court has held that a witness's initial identification of the defendant, by means of a

30

single photograph, is "impermissibly suggestive." ***Christmas v. State***, 10 So. 3d 413, 419 (Miss. 2009). However, the admission of an impermissibly suggestive pretrial identification, without more, does not offend due process. ***Neil v. Biggers***, 409 U.S. 188, 198, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972). "Such identification is admissible if, considering the totality of the circumstances surrounding the identification procedure, the identification did not give rise to a very substantial likelihood of misidentification." ***Roche v. State***, 913 So. 2d 306, 311 (Miss. 2005) (citing ***York v. State***, 413 So. 2d 1372, 1383) (internal citations omitted)). In determining the reliability of an identification, this Court must consider the following factors:

> the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

***Biggers***, 409 U.S. at 200. The reliability of the witness's identification must be weighed against the corrupting effect of the suggestive identification. ***Roche***, 913 So. 2d at 311.

¶57.    This Court has reviewed an argument regarding the admissibility of a single-photograph pretrial identification in ***Johnson v. State***, 904 So. 2d 162 (Miss. 2005). In ***Johnson***, the defendant was charged with the sale of cocaine. ***Id.*** at 165. The undercover police officer who purchased the cocaine identified the defendant after being shown a single booking photograph of the defendant from the night of his arrest. ***Id.*** This Court found no error in the trial court's failure to exclude evidence of this identification. ***Id.*** at 169. Applying the ***Biggers*** factors, this Court found that the officer had ample opportunity to view the defendant, that the officer's level of attention was high, that the officer was able to

accurately describe the defendant verbally before being shown the photograph, that the officer was "100% sure" that the person in the photograph was the defendant, and that the officer was shown the defendant's photograph only a few days after the drug transaction. *Id.* Based on this evidence, this Court found that there was little likelihood of misidentification under the circumstances. *Id.*

¶58. In the instant case, Mitchell's pretrial identification of Ronk was equally reliable. Mitchell had ample opportunity to view Ronk as she assisted him with the purchase of a diamond ring. She described her interaction with Ronk at length, displaying a high degree of attention to detail. The accuracy of Mitchell's testimony was corroborated by the receipt of Ronks' purchase, and the accuracy of her identification was bolstered by her positive in-court identification of Ronk. When shown the surveillance photograph of Ronk, Mitchell stated that she was sure that Ronk was the man who had purchased the ring from her. And finally, the length of time between Mitchell's interaction with Ronk and her identification of him was, at most, one day. Based on the totality of the circumstances, the conditions of Mitchell's pretrial identification of Ronk were not so unduly suggestive as to give rise to a substantial likelihood of an irreparable misidentification. *Simmons*, 390 U.S. at 383. This argument is without merit.

> **E.** **Whether the State committed prosecutorial misconduct by presenting unnecessary and inflammatory evidence concerning Craite's suffering and injuries.**

¶59. Ronk takes issue with various statements adduced by the State through its witnesses and during closing arguments regarding the extent of Craite's suffering and injuries. Specifically, Ronk challenges Dr. McGarry's testimony that Craite suffered burning and

32

blistering to the lining of her mouth, tongue, larynx, and windpipe, that Craite was still alive and breathing at the time of the fire, and that Craite would have been able to feel the pain of her body burning. He also argues that it was improper for the State to sum up this testimony during closing arguments with the following statement: "And you know she felt pain as he stabbed her not once, not twice, but three times in the back. And as she fell to the floor you know she was confused, you know she was in pain." Ronk argues that each of these instances "injected inappropriate emotional distractions into the courtroom."

¶60. Ronk failed to object to any of this testimony or argument by the State. As such, this claim is procedurally barred. *See Cole*, 525 So. 2d at 369. Despite Ronk's failure to preserve this alleged error, his argument is without merit. Dr. McGarry's testimony was relevant to proving the connection between Craite's death and the arson. During trial, part of Ronk's theory of defense was that Craite was already dead when he set her house on fire. Thus, Dr. McGarry's testimony had significant probative value in contradicting this assertion and supporting the State's theory that Ronk had committed capital murder during the commission of an arson. As for the prosecutor's closing argument, we find the challenged statement to be a proper restatement of Dr. McGarry's testimony. Attorneys generally are afforded wide latitude in arguing their cases to the jury. *Sheppard v. State*, 777 So. 2d 659, 661 (Miss. 2001). "[A]ny allegedly improper prosecutorial comment must be considered in context, considering the circumstances of the case, when deciding on their propriety." *Smith v. State*, 729 So. 2d 1191, 1215 (Miss. 1998). The prosecutor's comments here were not so inflammatory as to warrant relief.

**VI.    Whether the State overcompensated Heather Hindall for her trial testimony.**

¶61.    Hindall was required to travel from Florida and stay in Gulfport for three nights to testify at Ronk's trial.  After trial, the State filed several motions to pay expenses related to Hindall's travel.  Specifically, the State requested permission to pay $444.80 to Bell Travel Services, Inc., for Hindall's round-trip airfare, $82.00 to Hampton Inn for Hindall's one-night stay, and $233.77 to Hilton Garden Inn for Hindall's two-night stay and meals.  The trial court approved the payment of each of these expenses.  The State also requested permission to pay Hindall $113.97 for travel and expenses.  Finding that Hindall was a "material witness for the prosecution" and that the expenses were "reasonable, necessary, and allowable under the law," the trial court approved this payment, as well.  However, the record indicates that the State paid Hindall only $105.00.

¶62.    On appeal, Ronk claims that the State overpaid Hindall for her testimony and concealed it from the defense.  As a result, Ronk argues that these excess payments violate his constitutional rights. But Ronk failed to raise this issue in the trial court.  Ronk argues that the State failed to disclose Hindall's payment, but the record belies this assertion.  The State's motion to secure Hindall's attendance, which was filed in the trial court approximately six months before trial, specified that the State would "pay the reasonable and necessary expenses for said travel and accomodations.  After trial, the State filed a motion to pay the reasonable and necessary expenses related to Hindall's travel.  The trial court granted this motion in an order dated November 17, 2010.  Ronk had an opportunity to challenge this payment in the trial court, as the hearing on his post-trial motions was not held

34

until three months later, on February 28, 2011. Again, Ronk failed to object to Hindall's compensation. Thus, his argument is procedurally barred. *Keller v. State*, 138 So. 3d 817, 839 (Miss. 2014) (finding capital-murder defendant's claim of excessive witness compensation procedurally barred, where defendant failed to raise the issue at trial or in a post-trial motion). Procedural bar notwithstanding, we find no merit in his claim.

¶63.     Because Hindall was not a resident of Mississippi, the State secured her testimony by subpoena, pursuant to the Uniform Law to Secure the Attendance of Witnesses from Without the State in Criminal Cases. *See* Miss. Code Ann. §§ 99-9-27 to 99-9-37 (Rev. 2007). Section 99-9-33 of the Mississippi Code governs the compensation of such witnesses for travel expenses. Section 99-9-33 provides: "If the witness is summoned to attend and testify in this state, he shall be tendered the sum of ten ($.10) cents a mile for each mile and five ($5.00) dollars for each day that he is required to travel and attend as a witness." Miss. Code Ann. § 99-9-33 (Rev. 2007). In *Woodward v. State*, 726 So. 2d 524, 542-43 (Miss. 1997), this Court considered whether alleged excess payments to witnesses constituted prosecutorial misconduct warranting reversal. In *Woodward*, the defendant claimed that the State's expert witness had received excess compensation for testifying at the defendant's resentencing hearing. *Id.* at 543. The expert, who had flown from California to attend the hearing, was paid $975 for expenses incurred during his three days of testimony. *Id.* This Court could find no authority supporting the amount of the witness's fee. *Id.* at 544. This Court then held, "[I]t is conceivable that excessive payments to witnesses could affect the outcome of a trial in some situations. However, in the case sub judice, there is no indication that the witnesses' testimony changed based on the payments they received." *Id.* Because the defendant failed

35

to show any prejudice resulting from the alleged excessive payment, this Court found no error.

¶64.   Applying the reasoning of ***Woodward***, we find that Ronk's claim of prosecutorial misconduct is without merit.  According to Ronk, Hindall should have been paid $126: $30 for three days of travel and $96 for the 960-mile round trip.[1]  The record reflects that the State paid Hindall $105 directly, which is within the limits allowed by statute.  The remaining funds were paid directly to vendors, not to Hindall, and Ronk offers no authority suggesting that direct payments to vendors violate Section 99-9-33, absent some showing of impropriety. In addition, Ronk presents no evidence indicating that this payment influenced Hindall's testimony in any way.  Accordingly, in addition to being procedurally barred, this issue is without merit.

## VII.   Whether the trial court properly instructed the jury during the sentencing phase of trial.

¶65.   Ronk claims that the trial court instructed the jury improperly regarding the aggravating and mitigating circumstances it was required to consider during the sentencing hearing.  As previously stated, a defendant is entitled to have instructions given which present his theory of the case to the jury, provided that the instruction correctly states the law, has a foundation in the evidence, and is not covered fairly elsewhere in the instructions.

---

[1]This calculation is incorrect.  Section 99-9-33 allows for five dollars for each day the witness is required to travel and attend as a witness, not ten dollars.  Also, Hindall's trip consisted of four days, not three.  Thus, under Ronk's theory, Hindall was entitled to $116.

*Spires v. State*, 10 So. 3d 477, 483-84 (Miss. 2009). We will address Ronk's arguments regarding the mitigation and aggravation instructions seprately.

### A. Mitigating Circumstances

### 1. Statutory Mitigating Circumstances

¶66. "[I]n order to meet the requirement of the Eighth and Fourteenth Amendments, a capital-sentencing system must allow the sentencing authority to consider mitigating circumstances." *Jurek v. Texas*, 428 U.S. 262, 271, 96 S. Ct. 2950, 49 L. Ed. 2d 929 (1976). In Mississippi, the jury is permitted to consider the following statutory mitigating factors during a capital-sentencing hearing:

> (a) The defendant has no significant history of prior criminal activity. (b) The offense was committed while the defendant was under the influence of extreme mental or emotional disturbance. (c) The victim was a participant in the defendant's conduct or consented to the act. (d) The defendant was an accomplice in the capital offense committed by another person and his participation was relatively minor. (e) The defendant acted under extreme duress or under the substantial domination of another person. (f) The capactity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. (g) The age of the defendant at the time of the crime.

Miss. Code Ann. § 99-19-101(6) (Supp. 2014). The jury also is entitled to consider "[a]ny other matter, any other aspect of the defendant's character or record, and any other circumstances of the offense" presented at trial that the jury deems to be mitigating on behalf of the defendant. *See Evans v. State*, 725 So. 2d 613, 693-94 (Miss. 1997) (approving of the use of "catch-all" mitigation instructions in place of instructions on nonstatutory mitigating factors).

¶67. At the conclusion of Ronk's sentencing hearing, Ronk was granted a catch-all mitigation instruction tracking the above language in *Evans*. However, Ronk did not request specific instructions on any of the statutory mitigating circumstances. On appeal, Ronk argues that the trial court's failure to instruct the jury on specific statutory mitigating circumstances rendered his sentencing hearing fundamentally unfair.

¶68. Because Ronk did not request any instructions on statutory mitigating circumstances or object to the mitigation instruction actually given, he is procedurally barred from raising this issue for the first time on appeal. We cannot hold a trial court in error on a matter not presented to it for a decision. *Moawad v. State*, 531 So. 2d 632, 634 (Miss. 1988). Nor do we find that the trial court was required to craft jury instructions sua sponte on specific statutory mitigating factors. "The case law does not impose upon a trial court a duty to instruct the jury sua sponte, nor is a court required to suggest instructions in addition to those which the parties tender." *Conner v. State*, 632 So. 2d 1239, 1254 (Miss. 1994), *overruled on other grounds by Weatherspoon v. State*, 732 So. 2d 158, 162 (Miss. 1999). To the extent that Ronk frames this argument as a claim of ineffective assistance of counsel, we again hold that this issue is not based on evidence fully apparent from the record, and we decline to address it on appeal.

### 2. D-S-2 and D-S-9

¶69. Ronk argues that the trial court erred in denying his proffered sentencing instructions D-S-2 and D-S-9, which informed the jury of its ability to sentence Ronk to life without parole even if it found no mitigating circumstances worthy of consideration. D-S-2 provided:

Each individual juror must decide for themselves whether the death penalty or life imprisonment without parole or probation is an appropriate punishment for the defendant. Even if mitigating circumstances do not outweigh aggravating circumstances, the law permits you, the jury to impose a sentence of life imprisonment without the possibility of parole.

Only if you, the jurors, unanimously agree beyond a reasonable doubt that death is the appropriate punishment may you impose a sentence of death. . . .

D-S-9 reiterated essentially the same concept, providing:

The Court instructs the jury that a decision to sentence the Defendant to life imprisonment without parole, even if you find there are not mitigating circumstances in this case which are worthy of your consideration, and/or, your inability to reach a sentencing decision, will not violate the laws of this State or your oath as jurors.

The State objected to the second sentence of D-S-2 and all of D-S-9, arguing that they were nullification instructions. The trial court rejected D-S-9 in its entirety, along with the second sentence of D-S-2, finding them to be improper sympathy instructions. The trial court removed the second sentence of instruction D-S-2 and presented it to the jury as instruction D-S-2A.

¶70. We find that the trial court did not abuse its discretion in refusing D-S-2 and D-S-9. This Court previously has found similarly worded instructions to be mercy instructions. *See Galloway v. State*, 122 So. 3d 614, 656 (Miss. 2013); *Thorson v. State*, 895 So. 2d 85, 108 (Miss. 2004); *Ballenger*, 667 So. 2d 1242, 1265 (Miss. 1995); *Foster v. State*, 639 So. 2d 1263, 1300 (Miss. 1994). "[C]apital defendants are not entitled to a mercy instruction." *Jordan v. State*, 728 So. 2d 1088, 1099 (Miss. 1998) (citations omitted). "The State must not cut off full and fair consideration of mitigating evidence; but it need not grant the jury the choice to make the sentencing decision according to its own whims or caprice." *Saffle*

*v. Parks*, 494 U.S. 484, 493, 110 S. Ct. 1257, 108 L. Ed. 2d 415 (1990). In this case, the substance of D-S-2 and D-S-9 was covered appropriately by sentencing instruction six, which informed the jury of its duty to "apply your reasoned judgment as to whether the situation calls for life imprisonment without parole or whether it requires the imposition of death[.]" This argument is without merit.

### 3.    D-S-4

¶71.    Ronk also submitted D-S-4, which, according to Ronk, "reiterated that it is the State's burden to establish  entitlement to the death penalty, and that if any one juror felt the State had not done so, the proper verdict would be to sign the 'cannot agree' portion of the verdict form and notify the court of that fact."  The instruction specifically stated:

> The Court instructs the jury that before the Defendant can be sentenced to death by lethal injection, the aggravating circumstances must be proven to you beyond a reasonable doubt.  It must also be proven to you beyond a reasonable doubt that mitigating circumstances do not outweigh aggravating circumstances.  Finally, it must be proven to you beyond a reasonable doubt that death by lethal injection is the appropriate punishment for the Defendant.

> If, upon review of the evidence, any one of you has any reasonable doubt as to any of these matters, then the jury must inform the Court, in writing, that you are unable to agree unanimously upon the form of the punishment to be imposed.

The State objected to this instruction, arguing that its substance was covered elsewhere in the instructions.  The trial court noted that it was improper for the instruction to mention lethal injection as the method of execution.  Even with that reference deleted, the trial court found that D-S-4 was covered by other instructions.  Accordingly, the trial court rejected D-S-4 in its entirety.

40

¶72.    Ronk now claims that the trial court erred in denying D-S-4.  We find that this argument is without merit.  As an initial matter, because the method of execution is of no concern to the jury, portions of D-S-4 incorrectly stated the law.  *See Jackson v. State*, 684 So. 2d 1213, 1238 (Miss. 1996). In addition, the substance of D-S-4 was sufficiently covered by other instructions.   Instruction S-6-A, the State's long-form sentencing instruction, informed the jury that it was required to find beyond a reasonable doubt the existence of at least one *Enmund* factor[2] and at least one statutory aggravating factor before considering the death penalty.  Instruction S-6-A also informed the jury of its duty to render a sentence of life without parole if the aggravating factors did not outweigh the mitigating circumstances.  In addition, Instruction D-S-2A required the jury ultimately to agree beyond a reasonable doubt that death was the appropriate penalty.[3]  D-S-4 merely "reiterated" these concepts, and the trial court is not required to give multiple instructions on the same concept of law simply because the defendant requests them.  *Laney v. State*, 486 So. 2d 1242, 1247 (Miss. 1986). The trial court did not abuse its discretion in denying D-S-4.

### 4.    D-S-7

¶73.    Ronk argues that the trial court erred in denying instruction D-S-7, which would have informed the jury that, if it chose not to sentence Ronk to death, his sentence of life without parole would not be reduced or suspended, and he would never be eligible for parole. We

---

[2]*Enmund v. Florida*, 458 U.S. 782, 102 S. Ct. 3368, 73 L. Ed. 2d 1140 (1982). *See also* Miss. Code Ann. § 99-19-101(5) (Rev. 2007).

[3] We note that the jury is not required to find beyond a reasonable doubt that death is the appropriate penalty. *See Simmons v. State*, 805 So. 2d 452, 600 (Miss. 2001) (citing *Williams v. State*, 684 So. 2d 1179, 1202 (Miss. 1996)).

find this argument to be without merit. This Court has held that, "except in habitual offender cases, where a life sentence would automatically mean life without parole, the parole issue should not be considered by the sentencing jury." *Flowers v. State*, 842 So. 2d 531, 557 (Miss. 2003). In this case, "[b]y giving only the sentencing options of death or life imprisonment without the possibility of parole, the trial judge properly gave the jury all the instructions that were needed." *Id.* The trial court did not abuse its discretion in denying D-S-7.

### 5. D-S-8

¶74. Ronk's proposed instruction D-S-8 informed the jury that the trial court would sentence Ronk to life imprisonment without parole if the jury was unable to agree unanimously on punishment. The trial court denied this instruction, finding it to be cumulative of other instructions already accepted by the court. Ronk argues that the trial court's ruling was erroneous.

¶75. This Court reviewed a nearly identical instruction in *Edwards v. State*, 737 So. 2d 275 (Miss. 1999). In *Edwards*, the defendant proffered a jury instruction informing the jury that, if it could not agree on punishment, the trial court would sentence the defendant to life without parole. *Id.* at 316. This Court acknowledged that the defendant's proffered instruction correctly stated the law[4] but found no error in the trial court's decision to deny the instruction. *Id.* at 316-17. This Court found the defendant's proffered instruction was cumulative of other instructions given by the trial court, which fully informed the jury of its

---

[4] *See* Miss. Code Ann. § 99-19-103 (Rev. 2007).

sentencing options. *Id.* at 316. "There is no error in the denial of a cumulative instruction as a defendant is not entitled to multiple instruction in language he favors." *Id.* (citing *Walker v. State*, 671 So. 2d 581, 613 (Miss. 1995)).

¶76.   Like the instruction in *Edwards*, D-S-8 correctly stated the law, but it was also covered by other instructions. Instruction S-6-A informed the jury of the available sentences and gave the jury the option of returning a verdict stating, "We, the Jury, are unable to agree unanimously on punishment." Thus, the trial court did not err in denying D-S-8.

### 6.   C-S-1

¶77.   At the conclusion of the sentencing hearing, the State offered instruction C-S-1, which stated in relevant part, "You should not be influenced by bias, sympathy, or prejudice. Your verdict should be based on the evidence and not upon speculation, guesswork, or conjecture." Ronk did not object to C-S-1 at the sentencing hearing. However, on appeal, he now claims that the trial court erred in giving C-S-1, because it prohibited the jury from considering mercy or sympathy.

¶78.   Because Ronk failed to object to C-S-1 at the sentencing hearing, and because Ronk cites no authority in support of his argument, this issue is procedurally barred. *See Williams v. State*, 684 So. 2d 1179, 1187 (Miss. 1996). Procedural bar notwithstanding, Ronk's argument is without merit. This Court has held that "a jury can properly be cautioned against being swayed by sympathy," and this Court has repeatedly upheld the use of sentencing instructions similar to C-S-1. *Wiley v. State*, 750 So. 2d 1193, 1204 (Miss. 1999); *Howell v. State*, 860 So. 2d 704, 759 (Miss. 2003); *Turner v. State*, 732 So. 2d 937 (Miss. 1999). Accordingly, the trial court did not err in giving C-S-1.

43

### B. Aggravating Circumstances

¶79.   Section 99-19-101(5) limits a capital sentencing jury's consideration of aggravating circumstances to ten statutory aggravators.  *See* Miss. Code Ann. § 99-19-101(5) (Supp. 2014).  The jury must find the existence of at least one of these aggravating circumstances beyond a reasonable doubt to impose the death penalty.  Miss. Code Ann. § 99-19-101(3)(b) (Supp. 2014).  At Ronk's sentencing hearing, the State presented evidence of two statutory aggravators:  "the capital offense was committed while the defendant was engaged . . . in the commission of . . . arson," and "[t]he capital offense was especially heinous, atrocious or cruel."  Miss. Code Ann. § 99-19-101(5)(d),(i) (Supp. 2014).  Ronk argues that the trial court erred in allowing the jury to consider these aggravating factors, because they were not supported by the evidence.  We address each of Ronk's arguments in turn.

#### 1.   "Committed while engaged in the commission of arson" Aggravator

¶80.   Here, Ronk reasserts his argument that he did not kill Craite while he was engaged in the commission of an arson because Craite was already dead when he set fire to her house.  This Court has thoroughly addressed Ronk's arguments in sections I(C) and II of this opinion.  As stated previously, sufficient evidence supports a finding that Craite was still alive at the time of the arson, and she was unable to escape the fire due to the wounds inflicted upon her by Ronk.  This issue is without merit.

#### 2.   "Heinous, atrocious, and cruel" Aggravator

44

¶81.    Ronk argues that no evidence supports this aggravator, because the State presented no evidence proving that Craite was still conscious at the time of the arson. Ronk also argues that no evidence indicates that he knew Craite was still alive when he set her house on fire.

¶82.    We find this argument to be without merit. To support a finding of this aggravator, this Court has required the State to show that the capital offense "was accompanied by such additional acts as to set the crime apart from the norm of capital felonies – the conscienceless or pitiless crime which is unnecessarily torturous to the victim." *Lockett v. State*, 614 So. 2d 888, 896 (Miss. 1992). In the instant case, the State presented evidence through the testimony of Dr. McGarry that Ronk's knife severed a major artery in Craite's chest, punctured both her lungs, and pierced her liver, filling her chest and abdominal cavities with blood. He also explained that Craite was still alive and breathing during the fire; that she had suffered burning and blistering to the lining of her mouth, tongue, larynx, and windpipe; and that the fire had destroyed much of her flesh down to the bone. After stabbing Craite, Ronk had poured gasoline in the bedroom where she lay incapacitated, evincing his intent to destroy her body. According to Dr. McGarry, Craite would have been able to feel the pain of her body burning, but she was unable to escape due to her wounds. To add to the cruel nature of the crime, the evidence showed that Ronk also stole valuables from Craite's home and used her money to buy an engagement ring for his girlfriend and to escape to Florida.

¶83.    "[T]he length of time it takes the victim to die, the number of wounds inflicted, the factors leading up to the final killing, whether the defendant inflicted physical pain before death, the mental anguish and physical torture suffered by the victim prior to death, and the vulnerability of the victim" are factors which should be considered in determining whether

45

the capital offense was especially heinous, atrocious, and cruel. ***Bennett v. State***, 933 So. 2d 930, 954 (Miss. 2006). Based on the foregoing, we find that the State presented sufficient evidence to present this aggravating circumstance to the jury, and the jury could have found this aggravator beyond a reasonable doubt.

¶84. Ronk also argues that this aggravating circumstance is unconstitutionally vague. However, this Court consistently has upheld the use of this aggravator through instructions identical to the one given at Ronk's sentencing hearing. *See **Gillett v. State***, 56 So. 3d 469 (Miss. 2010); ***Stevens v. State***, 806 So. 2d 1031, 1060 (Miss. 2001); ***Crawford v. State***, 716 So. 2d 1028 (Miss. 1998); ***Mhoon v. State***, 464 So. 2d 77 (Miss. 1985); ***Coleman v. State***, 378 So. 2d 640 (Miss. 1979). This argument is without merit.

### 3. New Sentencing Hearing

¶85. Ronk argues that the Sixth Amendment requires this case to be remanded for a new sentencing hearing if any of the aggravating circumstances found by the jury are determined to be invalid. Because we find no invalid aggravating circumstance, we need not address this issue. Ronk is not entitled to a new sentencing hearing.

### VIII. Whether the imposition of the death penalty in this case violates the United States Constitution.

¶86. Under this assignment of error, Ronk makes various arguments that the imposition of the death penalty in this case violates the United States Constitution. We address each argument separately.

### A. Indictment

¶87. Ronk argues that his indictment was constitutionally defective because it failed to charge all elements necessary to impose the death penalty. Specifically, Ronk asserts that his indictment failed to include a *mens rea* element and did not list any statutory aggravating circumstances. Ronk claims that these alleged failures violate *Apprendi v. New Jersey*, 530 U.S. 466, 476-82, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), which requires any fact, other than a prior conviction, that increases the maximum penalty for a crime to be found by a jury beyond a reasonable doubt; and *Ring v. Arizona*, 536 U.S. 584, 609, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), which requires that the fact-finding determinations necessary to impose the death penalty be made by a jury.

¶88. This Court has explicitly rejected the arguments presented by Ronk in *Goff v. State*, 14 So. 3d 625, 665 (Miss. 2009). Relying on *Apprendi* and *Ring*, the defendant in *Goff* argued that his indictment for capital felony murder did not charge all elements necessary to impose the death penalty. *Id.* In addressing the defendant's claim, this Court first pointed out that *"Apprendi and Ring* address issues wholly distinct from the present one, and in fact do not address indictments at all." *Id.* (citing *Spicer v. State*, 921 So. 2d 292, 319 (Miss. 2006)). This Court then held:

> Under Mississippi law, the underlying felony that elevates the crime to capital murder must be identified in the indictment along with the section and subsection of the statute under which the defendant is being charged. *Bennett v. State*, 933 So. 2d 930, 952 (Miss. 2006) (citing Miss. Code Ann. § 99-17-20). In addition, "[o]ur death penalty statute clearly states the only aggravating circumstances which may be relied upon by the prosecution in seeking the ultimate punishment." *Spicer*, 921 so. 2d at 319 (quoting *Brown*, 890 So. 2d at 918).

*Id.* Thus, "[w]hen Goff was charged with capital murder, he was put on notice that the death penalty might result, what aggravating factors might be used, and the mens rea standard that was required." *Id.* (citing *Stevens v. State*, 867 So. 2d 219, 227 (Miss. 2003)).

¶89.   Ronk also argues that this Court's holdings in *Goff* and other similar cases are incorrect in light of the United States Supreme Court's more recent holding in *Kansas v. Marsh*, 548 U.S. 163, 126 S. Ct. 2516, 165 L. Ed. 2d 429 (2006).  In *Marsh*, the United States Supreme Court reversed the Kansas Supreme Court's ruling that Kansas's death penalty statute was unconstitutional.  *Id.* at 182.  Acording to Ronk, "[O]n the way to reaching its conclusion [in *Marsh*] the Court compared the Kansas scheme to the Arizona scheme and found them essentially the same.  Mississippi's scheme is indistinguishable from Kansas [sic].  Thus, the position that *Ring v. Arizona* has no application to Mississippi's scheme is incorrect."   This argument is wholly without merit.  In fact, in *Pitchford v. State*, 45 So. 3d 216, 258 (Miss. 2010), this Court rejected this exact argument, verbatim, finding *Marsh* to be inapplicable to indictments.

¶90.   Mississippi's sentencing scheme, just like Kansas's, is distinguishable from the Arizona statute struck down in *Ring*, because "it is the jury which determines the presence of aggravating circumstances necessary for the imposition of the death sentence." *Thorson*, 895 So. 2d at 105 (quoting *Berry v. State*, 882 So. 2d 157, 173 (Miss. 2004)).  Even so, Ronk fails to explain how *Apprendi*, *Ring*, or *Marsh* applies to this assignment of error, as those cases did not address the constitutionality of indictments.  *See  Goff*, 14 So. 3d at 665.  This issue is without merit.

### B.      Constitutionality of Section 99-19-101(7)

¶91. The United States Supreme Court has held that the Eighth Amendment prohibits the imposition of the death penalty against a person who aids and abets in the commission of a felony that results in death, but who did not actually kill, attempt to kill, or intend that a killing would take place. *Enmund v. Florida*, 458 U.S. 782, 797, 102 S. Ct. 3368, 73 L. Ed. 2d 1140 (1982). *See also Tison v. Arizona*, 481 U.S. 137, 107 S. Ct. 1676, 95 L. Ed. 2d 127 (1987). In compliance with *Enmund*, Section 99-19-101(7) of the Mississippi Code requires the jury to find beyond a reasonable doubt at least one of four enumerated *scienter* factors before imposing the death penalty. *See* Miss. Code Ann. § 99-19-101(7) (Supp. 2014).

¶92. Ronk argues that Section 99-19-101(7) is unconstitutional, because it includes a *scienter* factor that was not approved in *Enmund* or *Tison* – the defendant "contemplated lethal force would be employed." *See* Miss. Code Ann. § 99-19-101(7)(d) (Supp. 2014). But Ronk concedes that his sentencing jury did not rely on this *scienter* factor in reaching its decision. Instead, the jury found the existence of another factor: "the Defendant actually killed Michelle Lynn Craite." *See* Miss. Code Ann. 99-19-101(7)(a) (Supp. 2014). Moreover, Ronk acknowledged at trial that this Court already has upheld the constitutionality of Section 99-19-101(7)(d). *See Knox v. State*, 901 So. 2d 1257, 1267-68 (Miss. 2005). Ronk cites no additional authority supporting his allegation that Section 99-19-101(7)(d) offends *Enmund* or *Tison*. This argument is without merit.

### C.    Use of Armed Robbery as an Aggravating Circumstance

¶93. Ronk claims that the use of armed robbery both as an element of his capital-murder charge and as an aggravating circumstance supporting the death penalty is unconstitutional. According to Ronk, "[u]sing the same facts to capitalize and aggravate violates the

longstanding constitutional precept that a death penalty can be imposed constitutionally only if 'the sentencing body's discretion [is] suitably directed and limited' so as to avoid arbitrary and capricious executions." *See Gregg v. Georgia*, 428 U.S. 153, 187, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976).

¶94.   Ronk's argument is incorrect.  The State did not charge Ronk with committing capital murder while engaged in an armed robbery, nor did it use the robbery as an aggravating circumstance during the sentencing hearing.   Rather, the arson was used both as the underlying felony during the culpability phase and an aggravating circumstance during the sentencing phase.  That being said, neither the United States Supreme Court nor this Court has found constitutional error in the use of the underlying felony as both an element of capital felony murder and an aggravating circumstance supporting the imposition of the death penalty.  *See Lowenfield v. Phelps*, 484 U.S. 231, 108 S. Ct. 546, 98 L. Ed. 2d 568 (1988); *Loden v. State*, 971 So. 2d 548, 569 (Miss. 2007).  This argument is without merit.

### D.     Lethal Injection

¶95.   Ronk argues that Mississippi's lethal-injection procedure violates the constitutional prohibition against cruel and unusual punishment.  According to Ronk, *Baze v. Rees*, 533 U.S. 35, 128 S. Ct. 1520, 170 L. Ed. 2d 420 (2008), requires this Court to reverse his death sentence until such time as a full hearing can be conducted concerning the constitutionality of the lethal-injection protocol.

¶96.   In *Baze*, a plurality of the United States Supreme Court held that the method of lethal injection constitutes cruel and unusual punishment if it presents a "substantial" or "objectively intolerable risk of serious harm" in light of "feasible, readily implemented"

50

alternative procedures. *Id.* at 52. The plurality upheld Kentucky's lethal-injection protocol and noted that "[a] State with a lethal injection protocol substantially similar to the protocol we uphold today would not create a risk that meets this standard." *Id.* at 62. The Fifth Circuit has upheld Mississippi's lethal-injection protocol under *Baze,* finding it to be "substantially similar to Kentucky's protocol that was examined in *Baze*." *Walker v. Epps*, 287 Fed. App'x 371, 375 (5th Cir. 2008). *See also **Thorson v. Epps***, 701 F.3d 444 (5th Cir. 2012). This Court also has held that Mississippi's lethal-injection procedure passes muster under the Eighth Amendment in light of *Baze*. ***Bennett v. State***, 990 So. 3d 155, 161 (Miss. 2008); ***King v. State***, 23 So. 3d 1067, 1071 (Miss. 2009); ***Goff***, 14 So. 3d at 665-66; ***Chamberlain v. State***, 55 So. 3d 1046 So. 3d 1046, 1056-57 (Miss. 2010); ***Pitchford***, 45 So. 3d at 256-57. Thus, Ronk's claim is without merit.

### E.    Additional Arguments

¶97.    In his final argument concerning this issue, Ronk argues that Section 99-19-105 of the Mississippi Code, as applied by this Court, fails to provide for adequate or meaningful appellate review in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Section 99-19-105 governs this Court's mandatory review of death sentences and requires this Court to determine, among other things, "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in other cases, considering both the crime and the defendant." Miss. Code Ann. § 99-19-105(3) (Rev. 2007).

¶98.	Ronk argues that Section 99-19-105(3) allows for the arbitrary imposition of the death penalty because it does not require this Court to review cases where death has been imposed to cases where death is sought, but not imposed. However, Ronk provides this Court with "no controlling authority requiring this Court to change Mississippi's proportionality review." *See Lester v. State*, 692 So. 2d 755, 801-02 (Miss. 1997), *overruled on other grounds by Weatherspoon v. State*, 732 So. 2d 158 (Miss. 1999) (declining to "undertake the overwhelming task of considering all death eligible cases in our review"). In the absence of some intervening precedent, we hold that Mississippi's capital sentencing scheme is entirely constitutional. *See Woodward v. State*, 726 So. 2d 524, 528 (Miss. 1997) (citations omitted).

¶99.	Ronk also argues that the death penalty is imposed in a discriminatory manner in violation of the Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment, in that it is imposed disproportionately against males, indigent defendants, and those accused of killing females. The Eighth Amendment is violated when a penalty is imposed selectively on minorities, "whom society is willing to see suffer though it would not countenance general application of the same penalty across the board." *Furman v. Georgia*, 408 U.S. 238, 245, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972) (Douglas, J., concurring). This Court has considered this issue and held that "Mississippi's statutory sentencing scheme in capital cases complies with the requirements of *Furman* and its progeny." *Underwood v. State*, 708 So. 2d 18, 38 (Miss. 1998) (citations omitted).

¶100.	Ronk's equal-protection claim also fails. To succeed on such a claim, the defendant must show "that the decisionmakers in his case acted with discriminatory purpose." *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S. Ct. 1756 (1987). Statistical evidence alone

is insufficient to prove discrimination. *Id.* at 292-297. Ronk provides no evidence that his sentencing jury acted in a discriminatory manner, but he relies on unsupported allegations of general discrimination. As previously discussed, Mississippi's sentencing scheme includes numerous safeguards to ensure that the death penalty is not imposed arbitrarily or in a discriminatory manner, not the least of which is this Court's mandatory proportionality review. *See generally* Miss. Code Ann. §§ 99-19-101 (Supp. 2014), 99-19-105(3)(c) (Rev. 2007). These arguments are without merit.

¶101. Finally, Ronk generally contends that the "heinous, atrocious, or cruel" aggravator is unconstitutionally broad and vague. For the reasons stated in section VII(B)(2) in this opinion, this argument is without merit.

## IX. Whether the death sentence is disproportionate to the crime.

¶102. As previously stated, Section 99-19-105 requires this Court to conduct an examination of Ronk's death sentence, considering the following factors:

> (a) Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; (b) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in Section 99-19-101; [and] (c) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant[.]

Miss. Code Ann. § 99-19-105(3)(a)-(c) (Rev. 2007). While Ronk challenges only the proportionality of his sentence here, we now take the opportunity to consider each factor in turn.

### A. Whether the death penalty was imposed under the influence of passion, prejudice, or any other arbitrary factor.

¶103. The record before us includes no evidence that Ronk's sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor, and Ronk has not pointed to any evidence of prejudicial or arbitrary conduct by the trial court, the jury, or the prosecution.

### B. Whether the evidence supports the jury's finding of statutory aggravating circumstances.

¶104. The jury found beyond a reasonable doubt the existence of three statutory aggravating circumstances: (1) the capital offense was committed by a person under a sentence of imprisonment, (2) the capital offense was committed while Ronk was engaged in the commission of an arson, and (3) the capital offense was especially heinous, atrocious, or cruel. *See* Miss. Code Ann. § 99-19-101(5)(a), (d), (i) (Supp. 2014).

¶105. At Ronk's sentencing the State produced evidence that Ronk had been convicted of grand larceny and sentenced to ten years' imprisonment three weeks prior to Craite's death. The evidence indicated that Ronk was serving house arrest in Craite's home at the time of the capital offense. Thus, sufficient evidence supports the jury's finding as to the first aggravator. In addition, for the reasons previously stated in this opinion, we find that the evidence supports the jury's finding of the second and third aggravators.

### C. Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

¶106. This consideration "requires a review of similar cases in which the death penalty was imposed and reviewed by this Court since *Jackson v. State*, 337 So. 2d 1242 (Miss. 1976)." *Manning v. State*, 765 So. 2d 516, 521-22 (Miss. 2000) (citing *Wiley v. State*, 691 So. 2d

959, 966 (Miss. 1997)). In making this assessment, we must consider both the crime and the defendant. *Wilcher v. State*, 697 So. 2d 1087, 1113 (Miss. 1997) (citing *Cabello v. State*, 471 So. 2d 332, 350 (Miss. 1985)).

¶107. The Legislature's inclusion of arson as a capitalizing felony represents a recognition of the extreme risk to human life associated with the commission of that felony. As the United States Supreme Court concluded, "reckless indifference to the value of human life may be every bit as shocking to the moral sense as an 'intent to kill.'" *Tison*, 481 U.S. at 157 (citation omitted). The practical effect of this reasoning is exemplified in this case. The evidence reflects that Ronk stabbed an unarmed victim multiple times in the back, took the time to change clothes and search the victim's house for items of value, poured a trail of gasoline through the victim's house and into the room where the victim lay incapacitated, and left the victim to suffer in the blaze as he fled to another state, seemingly destroying any evidence of his crime. While Ronk contends that his culpability is diminished because he was unaware that Craite was still alive when he committed the arson, his conduct is nevertheless analogous to the *Tison* Court's example of "the person who tortures another not caring whether the victim lives or dies, or the robber who shoots someone in the course of the robbery, utterly indifferent to the fact that the desire to rob may have the unintended consequence of killing the victim[.]" *Id.*

¶108. After considering the circumstances of Ronk's crime and comparing it to the cases included in the appendix below, we find that the jury's imposition of the death penalty in the instant case is not excessive or disproportionate.

## X. Whether any error can be considered harmless.

55

¶109. "A criminal is not entitled to a perfect trial, only a fair trial." *McGilberry v. State*, 741 So. 2d 894, 924 (Miss. 1999) (citing *Sand v. State*, 467 So. 2d 907, 911 (Miss. 1985)). Thus, even in a capital case, an error may be considered harmless "if it is clear beyond a reasonable doubt that it did not contribute to the verdict." *States v. State*, 88 So. 3d 749, 758 (Miss. 2012). We have found two arguable errors in Ronk's trial: the trial court's instruction on arson as a lesser-included offense of capital murder, and the admission of Craite's bank records. Because the jury convicted Ronk of the principal charge of capital murder, and not the lesser offense, this error had no effect on the jury's verdict. *See Conley*, 702 So. 2d at 792-93. And Ronk failed to object to the admission of the bank records, so we cannot hold the trial court in error for an issue not raised at trial. Accordingly, even in light of our heightened standard of scrutiny in capital cases, we find that these alleged errors did not deprive Ronk of a fair trial.

**XI.  Whether the cumulative effect of all errors mandates reversal or a new trial.**

¶110. This Court has held that "individual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." *Ross v. State*, 954 So. 2d 968, 1018 (Miss. 2007). Ronk urges this Court to find that the cumulative effect of the errors in this case requires reversal of his conviction and sentence.

¶111. We have found two arguable errors in the instant case, both of which are barred from consideration due to Ronk's failure to object at trial. Thus, after considering each of Ronk's

56

claims, we hold that the cumulative effect of all alleged errors was not such that Ronk was denied a fundamentally fair trial. *See **Wilburn v. State***, 608 So. 2d 702, 705 (Miss. 1992).

## CONCLUSION

¶112. For the forgoing reasons, we affirm Ronk's convictions and sentences.

¶113. **COUNT I: CONVICTION OF CAPITAL MURDER AND SENTENCE OF DEATH BY LETHAL INJECTION, AFFIRMED. COUNT II: CONVICTION OF ARMED ROBBERY AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT I.**

**RANDOLPH, P.J., LAMAR, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR. KITCHENS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J. DICKINSON, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.**

**KITCHENS, JUSTICE, SPECIALLY CONCURRING:**

¶114. I agree with the majority that the evidence in this case does not support the giving of an imperfect self-defense instruction, since, regardless of Ronk's intent, Craite was killed during the commission of the crime of arson. I write separately to express my concern over this Court's recent iterations of the crime we have named imperfect self-defense manslaughter.

¶115. At trial, the jury had before it Ronk's self-defense theory, having been instructed as follows:

> The Court instructs the Jury that to make a killing justifiable on the grounds of self defense, the danger to the Defendant must be either actual, present and urgent, or the Defendant must have *reasonable grounds* to apprehend a design on the part of the victim to kill him or to do him some great bodily harm, and in addition to this he must have *reasonable grounds* to apprehend that there is imminent danger of such design['s] being accomplished. It is for the jury to determine the reasonableness of the ground upon which the Defendant acts.

(Emphasis added.) The jury, thus instructed, rejected Ronk's self-defense theory and found him guilty of capital murder, the alternative having been acquittal thereof. Ronk requested, and was denied, the following so-called imperfect self-defense instruction:

> That the Defendant, Timothy Robert Ronk, did willfully kill Michelle Lynne Craite, without malice, under the bona fide belief, *but without reasonable cause therefore* [sic], that it was necessary for him so to do in order to prevent Michelle Lynne Craite from inflicting death or great bodily harm upon him .
> . . .

(Emphasis added.) If the jury had so found, Ronk would have been convicted of *manslaughter*. *See* Miss. Code Ann. § 97-3-35 (Rev. 2014) ("The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, *and not in necessary self-defense*, shall be manslaughter.") (Emphasis added.)

¶116. This Court long has construed Section 97-3-35 to incorporate the crime of manslaughter by imperfect self defense:

> There are three theories under which the appellant could be guilty of manslaughter: First, that he killed the deceased "in the heat of passion, without malice, by the use of a deadly weapon, without authority of law, and not in necessary self-defense" (section 1238, Code of 1906 [section 968, Hemingway's Code]); *second, that he killed the deceased without malice, under the bona fide belief, but without reasonable cause therefor, that it was necessary for him so to do in order to prevent the appellant from inflicting death or great bodily harm upon him*; and, third, that he unnecessarily killed the deceased while resisting an attempt by the deceased to commit a crime (section 1237, Code of 1906 [section 967, Hemingway's Code]).

*Williams v. State*, 127 Miss. 851, 90 So. 705, 706 (1922) (emphasis added). This Court restated the test in 1999: "[t]his Court recognizes the theory of 'imperfect self-defense' whereby an intentional killing may be considered manslaughter if done without malice but

under a bona fide (*but unfounded*) belief that it was necessary to prevent death or great bodily harm." ***Wade v. State***, 748 So. 2d 771, 775 (Miss. 1999) (citing ***Lanier v. State***, 684 So. 2d 93, 97 (Miss. 1996)) (emphasis added). In ***Lanier***, we had employed the established standard for imperfect self-defense manslaughter: "that [the defendant] killed the deceased without malice, under the bona fide belief, *but without reasonable cause therefor*, that it was necessary for him so to do in order to prevent the appellant from inflicting death or great bodily harm upon him; . . . ." ***Lanier***, 684 So. 2d at 97 (quoting ***Cook v. State***, 467 So. 2d 203, 207 (Miss. 1985); ***Williams***, 90 So. at 706) (emphasis added).

¶117.  The "bona fide (but unfounded)" language crept into our jurisprudence in ***Wade***, 748 So. 2d at 775, in the complete absence of any explanation, authority, or justification for revision of the well-established phrasing. I disagree that it precisely states the standard for the sort of conduct which can be found, by a jury, to constitute imperfect self-defense manslaughter. Finding no legal definition of the word *unfounded*, I resort to dictionaries. One definition of *unfounded* is "having no foundation or basis in fact." *Compact Oxford English Dictionary* 1260 (2d ed. 2003). Another well-known English language dictionary declares the word to mean " [n]ot based on fact or sound observation; groundless." *The American Heritage Dictionary* 740 (2d ed. 1983).

¶118.  Thus, for one to harbor an unfounded belief that self defense was warranted under a particular set of circumstances would require a determination that the belief had *no foundation in fact* or that the belief was *groundless*. Mississippi's older and longer-tenured standard involves a different analysis: that the bona fide belief that self defense was necessary was "*without reasonable cause* therefor." ***Williams***, 90 So. at 706 (emphasis

59

added). In other words, our standard requires the defendant's belief in the necessity of his conduct to have been *unreasonable*, a standard which juries routinely determine. The imperfect self-defense manslaughter standard, as detailed in **Williams**, precisely specifies what the State is required to prove: that the defendant's act of purported self defense was *without reasonable cause*. The crime of manslaughter by imperfect self defense is thus contrasted with an *acquittal* of a homicide charge, which requires that the defendant's act of purported self defense be reasonable. I would abandon the "bona fide (but unfounded)" language found in **Wade**, an innovation which serves no good purpose and injects a basis for confusion where none previously existed.

¶119. Additionally, I agree with Justice Dickinson's well-reasoned opinion that this Court has, in effect, amended the capital murder statute, which requires that a person be "engaged in the commission of" an enumerated crime. Miss. Code Ann. § 97-3-19 (Rev. 2014). A majority of this Court has, without reasonable explanation or authority, expanded that definition to include killings which occur before or after the commission of an enumerated crime. I join Justice Dickinson in advocating the abolition of the "one-continuous-transaction doctrine." But the majority recognizes that the jury here was instructed on the "one-continuous-transaction doctrine," and the majority is correct that this was an accurate statement of existing Mississippi law. Until such time as five or more members of this Court determine that the "one-continuous-transaction doctrine" is unsound, this judicially contrived concept remains viable in our State's jurisprudence.

**DICKINSON, P.J., JOINS THIS OPINION.**

60

**DICKINSON, PRESIDING JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶120. While I agree with the majority's result and much of its reasoning, I do not agree with its endorsement of this Court's so-called "one-continuous-transaction" doctrine, which is nothing more than a judicial amendment to Mississippi's capital-murder statute. Capital murder—as defined by the Legislature, and as it applies to this case—requires the

> killing of a human being without the authority of law by any means or in any manner . . . done with or without any design to effect death, by any person *engaged in the commission* of the crime of . . . arson."[5]

¶121. This statute clearly and unambiguously requires that the killing take place during a very specific time frame: while the person is "engaged in the commission of . . . arson," which is not the same as a killing that takes place *before* or *after* the commission of arson.

¶122. This Court's "one-continuous-transaction" doctrine as instructed to the jury defined "a killing occurring while engaged in the commission of an arson" as "the actions of the defendant leading up to the arson, the arson, and the flight from the scene of the arson." But things that occur "leading up to an arson" are not things that occur "during the commission" of an arson, as required by the statute; and things that occur after the arson are not things that occur "during the commission" of an arson, as required by the statute. Stated another way, the majority says the Court's phrases "leading up to" and "flight from the scene" equal the Legislature's phrase "during the commission of."

¶123. This Court can point to no statutory authority for its "one-continuous-transaction" theory which does not require the killing to take place *while* (not before or after) the accused

---

[5] Miss. Code Ann. § 97-3-19 (Rev. 2014) (emphasis added).

is "engaged in the commission" of the arson.  The "one-continuous-transaction" theory is pure, made-up fiction, and I decline to subscribe to it.

**KING, J., JOINS THIS OPINION**.

# APPENDIX

## DEATH CASES AFFIRMED BY THIS COURT

*Caleb Corrothers v. State*, 148 So. 3d 278 (Miss. 2014).

*Jason Lee Keller v. State*, 138 So. 3d 817 (Miss. 2014).

*Leslie Galloway III v. State*, 122 So. 3d 614 (Miss. 2013).

*Bobby Batiste v. State*, 121 So 3d 808 (Miss. 2013).

*Roger Lee Gillett v. State,* 56 So. 3d 469 (Miss. 2010).

*Moffett v. State,* 49 So. 3d 1073 (Miss. 2010).

*Pitchford v. State,* 45 So. 3d 216 (Miss. 2010).

*Goff v. State,* 14 So. 3d 625 (Miss. 2009).

*Wilson v. State*, 21 So. 3d 572 (Miss. 2009).

*Chamberlin v. State,* 989 So. 2d 320 (Miss. 2008).

*Loden v. State,* 971 So. 2d 548 (Miss. 2007).

*King v. State,* 960 So. 2d 413 (Miss. 2007).

*Bennett v. State,* 933 So. 2d 930 (Miss. 2006).

*Havard v. State,* 928 So. 2d 771 (Miss. 2006).

*Spicer v. State,* 921 So. 2d 292 (Miss. 2006).

*Hodges v. State,* 912 So. 2d 730 (Miss. 2005).

*Walker v. State,* 913 So. 2d 198 (Miss. 2005).

*Le v. State,* 913 So. 2d 913 (Miss. 2005).

*Brown v. State,* 890 So. 2d 901 (Miss. 2004).

*Powers v. State,* 883 So. 2d 20 (Miss. 2004)

*Branch v. State,* 882 So. 2d 36 (Miss. 2004).

*Scott v. State,* 878 So. 2d 933 (Miss. 2004).

*Lynch v. State,* 877 So. 2d 1254 (Miss. 2004).

*Dycus v. State,* 875 So. 2d 140 (Miss. 2004).

*Byrom v. State,* 863 So. 2d 836 (Miss. 2003).

*Howell v. State,* 860 So. 2d 704 (Miss. 2003).

*Howard v. State,* 853 So. 2d 781 (Miss. 2003).

*Walker v. State,* 815 So. 2d 1209 (Miss. 2002). *following remand.

*Bishop v. State,* 812 So. 2d 934 (Miss. 2002).

*Stevens v. State,* 806 So. 2d 1031 (Miss. 2002).

*Grayson v. State,* 806 So. 2d 241 (Miss. 2002).

*Knox v. State,* 805 So. 2d 527 (Miss. 2002).

*Simmons v. State,* 805 So. 2d 452 (Miss. 2002).

*Berry v. State,* 802 So. 2d 1033 (Miss. 2001).

*Snow v. State*, 800 So. 2d 472 (Miss. 2001).

*Mitchell v. State,* 792 So. 2d 192 (Miss. 2001).

*Puckett v. State,* 788 So. 2d 752 (Miss. 2001). * following remand.

*Goodin v. State,* 787 So. 2d 639 (Miss. 2001).

*Jordan v. State,* 786 So. 2d 987 (Miss. 2001).

*Manning v. State,* 765 So. 2d 516 (Miss. 2000). *following remand.

*Eskridge v. State,* 765 So. 2d 508 (Miss. 2000).

*McGilberry v. State,* 741 So. 2d 894 (Miss. 1999)**.**

*Puckett v. State,* 737 So. 2d 322 (Miss. 1999). *remanded for **Batson** hearing.

*Manning v. State,* 735 So. 2d 323 (Miss. 1999). *remanded for **Batson** hearing.

*Hughes v. State,* 735 So. 2d 238 (Miss. 1999).

*Turner v. State,* 732 So. 2d 937 (Miss. 1999).

*Smith v. State,* 729 So. 2d 1191 (Miss. 1998).

*Burns v. State,* 729 So. 2d 203 (Miss. 1998).

*Jordan v. State,* 728 So. 2d 1088 (Miss. 1998).

*Gray v. State,* 728 So. 2d 36 (Miss. 1998).

*Manning v. State,* 726 So. 2d 1152 (Miss. 1998).

*Woodward v. State,* 726 So. 2d 524 (Miss. 1997).

*Bell v. State,* 725 So. 2d 836 (Miss. 1998).

*Evans v. State,* 725 So. 2d 613 (Miss. 1997).

*Brewer v. State***,** 725 So. 2d 106 (Miss. 1998).

*Crawford v. State,* 716 So. 2d 1028 (Miss. 1998).

*Doss v. State,* 709 So. 2d 369 (Miss. 1996).

*Underwood v. State,* 708 So. 2d 18 (Miss. 1998).

*Holland v. State,* 705 So. 2d 307 (Miss. 1997).

*Wells v. State***,** 698 So. 2d 497 (Miss. 1997).

*Wilcher v. State,* 697 So. 2d 1087 (Miss. 1997).

*Wiley v. State,* 691 So. 2d 959 (Miss. 1997).

*Brown v. State*, 690 So. 2d 276 (Miss. 1996).

*Simon v. State*, 688 So. 2d 791 (Miss.1997).

*Jackson v. State*, 684 So. 2d 1213 (Miss. 1996).

*Williams v. State,* 684 So. 2d 1179 (Miss. 1996).

*Davis v. State,* 684 So. 2d 643 (Miss. 1996).

*Taylor v. State*, 682 So. 2d. 359 (Miss. 1996).

*Brown v. State*, 682 So. 2d 340 (Miss. 1996).

*Blue v. State*, 674 So. 2d 1184 (Miss. 1996).

*Holly v. State*, 671 So. 2d 32 (Miss. 1996).

*Walker v. State*, 671 So. 2d 581 (Miss. 1995).

*Russell v. State*, 670 So. 2d 816 (Miss. 1995).

*Ballenger v. State*, 667 So. 2d 1242 (Miss. 1995).

*Davis v. State*, 660 So. 2d 1228 (Miss. 1995).

*Carr v. State*, 655 So. 2d 824 (Miss. 1995).

*Mack v. State*, 650 So. 2d 1289 (Miss. 1994).

*Chase v. State*, 645 So. 2d 829 (Miss. 1994).

*Foster v. State*, 639 So. 2d 1263 (Miss. 1994).

*Conner v. State*, 632 So. 2d 1239 (Miss. 1993).

*Hansen v. State*, 592 So. 2d 114 (Miss. 1991).

*\*Shell v. State*, 554 So. 2d 887 (Miss. 1989); **Shell v. Mississippi,** 498 U.S. 1 (1990) reversing, in part, and remanding; **Shell v. State**, 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.

*Davis v. State*, 551 So. 2d  165 (Miss. 1989).

*Minnick v. State*, 551 So. 2d 77 (Miss. 1989).

*\*Pinkney v. State*, 538 So. 2d 329 (Miss. 1989); *Pinkney v. Mississippi*, 494 U.S. 1075 (1990) vacating and remanding; *Pinkney v. State*, 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.

*\*Clemons v. State*, 535 So. 2d 1354 (Miss. 1988); *Clemons v. Mississippi*, 494 U.S. 738 (1990) vacating and remanding; *Clemons v. State*, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.

*Woodward v. State*, 533 So. 2d 418 (Miss. 1988).

*Nixon v. State*, 533 So. 2d 1078 (Miss. 1987).

*Cole v. State*, 525 So. 2d 365 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1346 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1317 (Miss. 1987).

*Faraga v. State*, 514 So. 2d 295 (Miss. 1987).

*\*Jones v. State*, 517 So. 2d 1295 (Miss. 1987); *Jones v. Mississippi*, 487 U.S. 1230 (1988) vacating and remanding; *Jones v. State*, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.

*Wiley v. State*, 484 So. 2d 339 (Miss. 1986).

*Johnson v. State*, 477 So. 2d 196 (Miss. 1985).

*Gray v. State*, 472 So. 2d 409 (Miss. 1985).

*Cabello v. State*, 471 So. 2d 332 (Miss. 1985).

*Jordan v. State*, 464 So. 2d 475 (Miss. 1985).

*Wilcher v. State*, 455 So. 2d 727 (Miss. 1984).

*Billiot v. State*, 454 So. 2d 445 (Miss. 1984).

*Stringer v. State*, 454 So. 2d 468 (Miss. 1984).

*Dufour v. State*, 453 So. 2d 337 (Miss. 1984).

*Neal v. State*, 451 So. 2d 743 (Miss. 1984).

*Booker v. State*, 449 So. 2d 209 (Miss. 1984).

*Wilcher v. State*, 448 So. 2d 927 (Miss. 1984).

*Caldwell v. State*, 443 So. 2d 806 (Miss. 1983).

*Irving v. State*, 441 So. 2d 846 (Miss. 1983).

*Tokman v. State*, 435 So. 2d 664 (Miss. 1983).

*Leatherwood v. State*, 435 So. 2d 645 (Miss. 1983).

*Hill v. State*, 432 So. 2d 427 (Miss. 1983).

*Pruett v. State*, 431 So. 2d 1101 (Miss. 1983).

*Gilliard v. State*, 428 So. 2d 576 (Miss. 1983).

*Evans v. State*, 422 So. 2d 737 (Miss. 1982).

*King v. State*, 421 So. 2d 1009 (Miss. 1982).

*Wheat v. State*, 420 So. 2d 229 (Miss. 1982).

*Smith v. State*, 419 So. 2d 563 (Miss. 1982).

*Johnson v. State*, 416 So. 2d 383 (Miss.1982).

*Edwards v. State*, 413 So. 2d 1007 (Miss. 1982).

*Bullock v. State*, 391 So. 2d 601 (Miss. 1980).

*Reddix v. State*, 381 So. 2d 999 (Miss. 1980).

*Jones v. State*, 381 So. 2d 983 (Miss. 1980).

*Culberson v. State*, 379 So. 2d 499 (Miss. 1979).

*Gray v. State*, 375 So. 2d 994 (Miss. 1979).

*Jordan v. State*, 365 So. 2d 1198 (Miss. 1978).

*Voyles v. State*, 362 So. 2d 1236 (Miss. 1978).

*Irving v. State*, 361 So. 2d 1360 (Miss. 1978).

*Washington v. State*, 361 So. 2d 6l (Miss. 1978).

*Bell v. State*, 360 So. 2d 1206 (Miss. 1978).

\*Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

## DEATH CASES REVERSED AS TO GUILT PHASE
## AND SENTENCING PHASE

*Manning v. State,* 158 So. 3d 302 (Miss. 2015).

*Byrom v. State,* 2014-DR-00230-SCT (April 3, 2014) (order).

*Ross v. State,* 954 So. 2d 968 (Miss. 2007).

*Flowers v. State,* 947 So. 2d 910 (Miss. 2006).

*Flowers v. State,*  842 So. 2d 531 (Miss. 2003).

*Randall v. State,* 806 So. 2d 185 (Miss. 2002).

*Flowers v. State,* 773 So. 2d 309 (Miss. 2000).

*Edwards v. State,* 737 So. 2d 275 (Miss. 1999).

*Smith v. State,* 733 So. 2d 793 (Miss. 1999).

*Porter v. State,* 732 So. 2d 899 (Miss. 1999).

*Kolberg v. State,* 704 So. 2d 1307 (Miss. 1997).

*Snelson v. State,* 704 So. 2d 452 (Miss. 1997).

*Fusilier v. State,* 702 So. 2d 388 (Miss. 1997).

*Howard v. State,* 701 So. 2d 274 (Miss. 1997).

*Lester v. State,* 692 So. 2d 755 (Miss. 1997).

*Hunter v. State*, 684 So. 2d 625 (Miss. 1996).

*Lanier v. State*, 684 So. 2d 93 (Miss. 1996).

*Giles v. State,* 650 So. 2d 846 (Miss. 1995).

*Duplantis v. State*, 644 So. 2d 1235 (Miss. 1994).

*Harrison v. State*, 635 So. 2d 894 (Miss. 1994).

*Butler v. State*, 608 So. 2d 314 (Miss. 1992).

*Jenkins v. State*, 607 So. 2d 1171 (Miss. 1992).

*Abram v. State*, 606 So. 2d 1015 (Miss. 1992).

*Balfour v. State*, 598 So. 2d 731 (Miss. 1992).

*Griffin v. State*, 557 So. 2d 542 (Miss. 1990).

*Bevill v. State*, 556 So. 2d 699 (Miss. 1990).

*West v. State*, 553 So. 2d 8 (Miss. 1989).

*Leatherwood v. State*, 548 So. 2d 389 (Miss. 1989).

*Mease v. State*, 539 So. 2d 1324 (Miss. 1989).

*Houston v. State*, 531 So. 2d 598 (Miss. 1988).

*West v. State*, 519 So. 2d 418 (Miss. 1988).

*Davis v. State*, 512 So. 2d 129l (Miss. 1987).

*Williamson v. State*, 512 So. 2d 868 (Miss. 1987).

*Foster v. State*, 508 So. 2d 1111 (Miss. 1987).

*Smith v. State*, 499 So. 2d 750 (Miss. 1986).

*West v. State*, 485 So. 2d 681 (Miss. 1985).

*Fisher v. State*, 481 So. 2d 203 (Miss. 1985).

*Johnson v. State*, 476 So. 2d 1195 (Miss. 1985).

*Fuselier v. State*, 468 So. 2d 45 (Miss. 1985).

*West v. State*, 463 So. 2d 1048 (Miss. 1985).

*Jones v. State*, 461 So. 2d 686 (Miss. 1984).

*Moffett v. State*, 456 So. 2d 714 (Miss. 1984).

*Lanier v. State*, 450 So. 2d 69 (Miss. 1984).

*Laney v. State*, 421 So. 2d 1216 (Miss. 1982).

# DEATH CASES REVERSED
## AS TO PUNISHMENT AND REMANDED
## FOR RESENTENCING TO LIFE IMPRISONMENT

*Reddix v. State*, 547 So. 2d 792 (Miss. 1989).

*Wheeler v. State*, 536 So. 2d 1341 (Miss. 1988).

*White v. State*, 532 So. 2d 1207 (Miss. 1988).

*Bullock v. State*, 525 So. 2d 764 (Miss. 1987).

*Edwards v. State*, 441 So. 2d 84 (Miss. l983).

*Dycus v. State*, 440 So. 2d 246 (Miss. 1983).

*Coleman v. State*, 378 So. 2d 640 (Miss. 1979).

# DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR A NEW TRIAL ON SENTENCING PHASE ONLY

*Fulgham v. State,* 46 So. 3d 315 (Miss. 2010).

*Rubenstein v. State,* 941 So. 2d 735 (Miss. 2006).

*King v. State,* 784 So. 2d 884 (Miss. 2001).

*Walker v. State,* 740 So. 2d 873 (Miss. 1999).

*Watts v. State,* 733 So. 2d 214 (Miss. 1999).

*West v. State,* 725 So. 2d 872 (Miss. 1998).

*Smith v. State*, 724 So. 2d 280 (Miss. 1998).

*Berry v. State,* 703 So. 2d 269 (Miss. 1997).

*Booker v. State*, 699 So. 2d 132 (Miss. 1997).

*Taylor v. State*, 672 So. 2d 1246 (Miss. 1996).

*\*Shell v. State*, 554 So. 2d 887 (Miss. 1989); *Shell v. Mississippi*, 498 U.S. 1 (1990) reversing, in part, and remanding; *Shell v. State* 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.

*\*Pinkney v. State*, 538 So. 2d 329 (Miss. 1989); *Pinkney v. Mississippi,* 494 U.S. 1075 (1990) vacating and remanding; *Pinkney v. State,* 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.

*\*Clemons v. State*, 535 So. 2d 1354 (Miss. 1988); *Clemons v. Mississippi*, 494 U.S. 738 (1990) vacating and remanding; *Clemons v. State*, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.

*\*Jones v. State*, 517 So. 2d 1295 (Miss. 1987); *Jones v. Mississippi,* 487 U.S. 1230 (1988) vacating and remanding; *Jones v. State*, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.

*Russell v. State*, 607 So. 2d 1107 (Miss. 1992).

*Holland v. State*, 587 So. 2d 848 (Miss. 1991).

*Willie v. State*, 585 So. 2d 660 (Miss. 1991).

*Ladner v. State*, 584 So. 2d 743 (Miss. 1991).

*Mackbee v. State*, 575 So. 2d 16 (Miss. 1990).

*Berry v. State*, 575 So. 2d 1 (Miss. 1990).

*Turner v. State*, 573 So. 2d 657 (Miss. 1990).

*State v. Tokman*, 564 So. 2d 1339 (Miss. 1990).

*Johnson v. State*, 547 So. 2d 59 (Miss. 1989).

*Williams v. State*, 544 So. 2d 782 (Miss. 1989); *sentence aff'd* 684 So. 2d 1179 (1996).

*Lanier v. State*, 533 So. 2d 473 (Miss. 1988).

*Stringer v. State*, 500 So. 2d 928 (Miss. 1986).

*Pinkton v. State*, 481 So. 2d 306 (Miss. 1985).

*Mhoon v. State*, 464 So. 2d 77 (Miss. 1985).

*Cannaday v. State*, 455 So. 2d 713 (Miss. 1984).

*Wiley v. State*, 449 So. 2d 756 (Miss. 1984); resentencing affirmed, *Wiley v. State*, 484 So. 2d 339 (Miss. 1986); *cert. denied, Wiley v. Mississippi*, 479 U.S. 1036 (1988); resentencing ordered, *Wiley v. State,* 635 So. 2d 802 (Miss. 1993) following writ of habeas corpus issued pursuant to *Wiley v. Puckett*, 969 So. 2d 86, 105-106 (5th Cir. 1992); resentencing affirmed.

*Williams v. State*, 445 So. 2d 798 (Miss. 1984). *Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

(Revised April 27, 2015.)